Pearson, J.
 

 V’hat is -the law of another State, or of a foreign country., is as much a “ question of law,” as what is the law of our own State. There is this difference, however : the court is pr \ ”.>ed to know judicially the public laws of our State, whib in respect to private laws, and the laws of other States ard í.-.t ign countries, this knowledge is not presumed; it folio.;C. at the existence of the hi4’er must be alleged and pr ■••■.c*
 
 as facts;
 
 for otherwise, the court cannot know or trf ■ notice of them. This is familiar learning ; 3 Wooddeson’c ; c . 3 75.
 

 In order to g; ' -Miecfc to this presumption of a knowledge, oil the part of Cm r-ourfc, of the public laws of our State, it is provided that if.- ’-6100118 who are entrusted with the administration of justice as a court, shall be men learned in the law; who either know it, or from their studies and pursuits of life, are supposed fo havij j^puliiff of ascertaining it; and to guard against error ip tIife#ComiLyand Superior Courts, a Supreme Court is es^al^ieheS* igfftsé duty it is to review the decisions of the othePeA-ts*,- in respect to all questions of law. "When an issue of irafcinvolves a question of law, the jury are not entrusted to cle»id<»ft; but it is the duty of the court to give to the jury instruction in regard to the law, and
 
 *133
 
 it is the duty of the jury to be governed by ouch instructions. In this way, as much accuracy, and as grout a degree of fixedness, in respect to questions of law, is seemed, as the nature of the subject admits of.
 

 Such being the case in respect to questions arising about our own laws, it would seem as a matter of course to be likewise so in respect to questions arising about the laws of other States, or of foreign countries, whenever, in the administration of justice, our Courts are called upon to deal with them.
 

 The assertion of a contrary opinion is met at once by these considerations, which, as it seems to us, caanot be answered: i. e., if juries are incompetent to decide questions in regard to our own laws, and the court is required to give them instructions in respect thereto, are they any more competent to decide questions in regard to the laws of other States, or foreign countries ? and do not they stand equally in need of instructions in respect to them? If such questions are to be decided by the juries, their decisions cannot be reviewed by the Supreme Court, and where is the security either for accuracy or fixedness? A jury is not a permanent tribunal, and no meuiori.il is kept of its action, except «he general conclusion — a
 
 verdict ¡
 
 which is binding only bow-een the parties to the particular case.
 

 But it is said our Courts are not presumed to know the laws of other States, or of foreign countries. Adrni. it; still, can it be questioned that the court is more com pc'oat to ascertain and understand such laws, than .the j ivy? or that the jury stand as much in need of instruction in respect thereto, as in respect to our own laws ?
 

 Again, it is said the existence of such laws must be alleged and proved as
 
 facts.
 
 Admit it. But bow are they to be proved? To the court, or to the jury ? Su.eiy to the court, because they are
 
 “
 
 questions of law.”
 

 We are aware that an impression prevails to some extent, that the proof is to be made to the jury. Tais originated from the expression “ to be proved as fac's,” and many loose
 
 dicta
 
 are to be met with, scattered through the books, in which
 
 *134
 
 these words have been inadvertently added to, so as to make the expression
 
 “ to
 
 be proven as facts to
 
 the jury."'
 
 After some examination, we have not been able to find any case where the question of the law of another State, or foreign country, has been left to be decided by a jury, without instructions from the court, in regard to it, except the case of
 
 Moore
 
 v.
 
 Gwyn, 5
 
 Ire. Rep. 187, which will be again referred to, and the case that we are now reviewing. If the law be written, and its existence is properly authenticated, the court, availing itself of the aid of the judicial decisions'of the country, puts a construction on it, and explains its meaning and legal effect, and the jury have nothing to do with it, save to follow the instructions of the court, as if it was our own law. If the law is unwritten, and its existence is presumed or admitted, then the jury have nothing to do with it. Eor example, if it be presumed, or admitted, that the common law prevails in the State of Yirginia, and has not been altered by statute in respect to the particular question, our Court decides what the common law is : e. g\, that the rule in Shel" ly’s case applies;
 
 Allen
 
 v. Pass, 4 Dev. and Bat. 77. There the Court say,
 
 “
 
 The law of Yirginia governs. It would have been gratifying to us, had we been furnished with
 
 judicial decisions
 
 of Yirginia, showing the construction there placed on bequests of a similar character, but none such have been presented, we must therefore presume, and such is admitted by the counsel on both sides to be the fact,”
 
 &c.
 
 Here the Court
 
 reviews
 
 the decision in the Court below, treating it as a question of law in all respects. Many other cases are to be met with in our reports, where this Court
 
 reviews
 
 the decision, which it could only do as a
 
 “
 
 question of law.”
 

 But if the existence of an unwritten law of another State, or foreign country, is not presumed or admitted, then its existence must be proved by competent witnesses, and the jury must then pass on the
 
 credibility of the
 
 witnesses, and it is the province of the court to inform the jury as to the construction, meaning, and legal effect of the law, supposing its existence to he proven; and to this end, the court should avail
 
 *135
 
 itself of the judicial decisions of the State or country. For example, if the existence of a judgment in France, sued on here, is proved by a
 
 sworn
 
 copy, the jury passes on the credibility of witnesses, the rest is for the court. So, if the existence of the unwritten law of Russia is sworn to by witnesses, the jury passes on their credibility, but its meaning, &c., is for the court.
 

 This view of the subject rests so firmly on the reason of the thing, that authority would not be required, but for the
 
 dicta
 
 and the case above referred to. There were two able and elaborate arguments in
 
 Mostyn
 
 v. Fabrigas, 1 Cowper, 161. Buller was one of the counsel, and'it is decided by Lord MaNSField. “ The way of knowing foreign laws is by admitting them to be proved as facts, and the Court must assist the jury in ascertaining what the law is.” In The Conflict of Laws, “ Let us consider in what manner courts of justice arrive at the knowledge of foreign laws; are they to be judicially taken notice of, or are they to be proved as matters of fact?' The established doctrine now is, that no court takes judicial notice of the laws of a foreign country, but they must be proved as facts,” sec. 637. “ But it may be asked whether they are to be proved as facts to the jury, if the case is a trial at the common law, or as facts to the court? It would seem the latter, for all matters of law ai’e properly referable to the court, and the object of the proof of foreign laws is to enable the court to instruct the jury what is, in point of law, the result, from foreign law, to be applied to the matter in controversy before them. The court is, therefore, to decide what is the proper evidence of the laws of a foreign country, and when evidence is given of these laws, the court is to judge of their applicability, when proved, to the case in hand.” Sec. 638. In a note, it is added,
 
 “
 
 Is not foreign law, offered in all cases, to instruct the court in matters of law material to the point in issue ? Can the court properly leave it to the jury to find out what the law is, and apply it to the case?” In-1st Greenleaf’s Ev. sec. 186, the learned author says : “ In regard to foreign laws, the better opinion seems -to be, that
 
 *136
 
 the proof musí be nade to the court rather than to the jury.” lie refers to Siczy and the cases there cited. In
 
 State
 
 v.
 
 Jackson,
 
 2 Dev. Rep. 563, Ruffin, J., says, “ A doubt lias suggested itself to the Court upon the effect of its being left by the Judge, in the Court below, to the jury to draw their inferences. We suppose it was on the idea that foreign laws are facts, and that the jury alone could deal with them. The existence of a foreign law is a fact, the court does not judicially know it, and therefore it must be proved, and the proof, like all other facts, necessarily goes to the jury; but
 
 when established, the meaning of the law,
 
 its construction and
 
 effect, is the province of the court.”
 

 In
 
 Knight
 
 v.
 
 Wall,
 
 2 Dev. and Bat. Rep. 125, Gastok, J., says, “The courts of this State do not know the law of other States, and a controversy respecting that law is ordinarily one of fact, which muct be decided on evidence by the jury, un„der the instruction of the court.”
 

 There seems to have been the same misapprehension in regard to this question, as at one time existed in respect to a verbal agreement. If the agreement be in writing, its construction, meaning and legal effect, are for the court, but if verbal, it was supposed, as the jury had to ascertain its terms, the whole matter was for them; whereas, it is now clearly settled that the j my has only to ascertain the words, and their construction, 'meaning, and legal effect, must be decided by the court as a question of law, and the jury instructed in respect thereto.
 

 Thus it is to be seen that
 
 Moore
 
 v.
 
 Gwyn, supra,
 
 is opposed by both principle and authority. It is put upon the cases of
 
 State
 
 v.
 
 Jackson
 
 and
 
 Knight
 
 v.
 
 Wall,
 
 referred to above, and the Court seems to have been under the impression that the ques ion was, “
 
 what was the common law of Virginia ?”
 
 The “ common law,” that is, the laws imported from the mother country by the colonies, and adopted as the basis of their jurisprudence, is the same every where, and the question was not how it was understood in Virginia, but what •was the “ common law,” supposing it to be proved that the
 
 *137
 
 common law exisíe 1 in that State, and bad not been modified or altered by stall ¡e. Three witnesses proved the existence of the common law in that State, but each gives a different opinion as to what it was understood to be, (at the time, we suppose, of the alleged gift or loan,) and the jury are left unaided to find out-, as best they could, what was the common law as understood in that State, which it was impossible for either jury or court to do, supposing the witnesses to be honest and equally intelligent. Yfhereas the Court was the proper tribunal to decide, and the question was, what was the common law, (as is done in
 
 Worrell
 
 v.
 
 Vinson,
 
 decided at this term,
 
 (ante,
 
 91,) where the decision of the Court below is reversed, and the question treated as one of law, the only purpose of the depositions being to prove that the common law existed in Virginia, and as was done in
 
 Allen
 
 v.
 
 Pass, supra.
 

 In our case, the Judge below erred in refusing to decide that, according to the common law, a gift was presumed, as is settled by repeated decisions, and in leaving it an open question of fact for the jury up-n the deposition of Mr. Hughes. Unfortunately, the jury do not cure the error by finding the law correctly, as was the case in
 
 State
 
 v. Jackson,
 
 supra.
 

 The other question, as to the power of the County Court to appoint an administrator, is settled, and is conceded in the argument.
 

 Pee OukiaM, Judgment reversed, and
 
 a venire <le novo.