MOTTU v. DAVIS.

(Filed 3 November, 1909.)

1. Pleadings—Distinct Defenses—Demurrer as to One—Procedure.

Under Revisal, sec. 4853, when a pleading contains averments of separate and distinct offenses, an adverse litigant may demur to one of such defenses and reply to another.

2. Judgment of Other States—Jurisdiction—Parties—Subject Matter.

In an action on a judgment recovered in a sister State, it is open to defendant to allege and show a want of jurisdiction in the Court rendering the judgment, either of the subject matter or the parties litigant, and this is allowable though the judgment sued on may recite jurisdictional facts.

3. Judgments of Another State — Non-Residence — Summons — Service—Proof.

A lack of jurisdiction of the person is not established by showing, without more, that process was personally served on a nonresident defendant while he was temporarily and of his own volition within the jurisdiction of the court rendering the judgment.

4. Judgments of Other States—Fraud—Proof.

In an action in the courts of this State on a judgment rendered in a sister State it is open to defendant to allege and prove fraud in the procurement of the judgment, and the term fraud in this connection includes all such circumstances of fraud or imposition in procuring the judgment as would induce and authorize the courts of the original forum to interfere to prevent the enforcement of an unconscionable recovery.

MOTTU *v.* DAVIS.

5. **Same—Pleadings.**

    This defense of fraud involves an issue of fact, and in order to be available it is not sufficient to aver in general terms that a judgment was procured by fraud, but the alleged facts must be set forth with sufficient fullness and accuracy to indicate the fraud charged and to apprise the offending party of what he will be called on to answer.

6. **Judgments—Contracts, Impairment of—Legislation—Constitutional Law.**

    While judgments are sometimes spoken of as contracts of record, they are not in realty contracts, and are never so considered in reference to the clause in the Federal Constitution which forbids that contracts should be impaired by State Legislation.

7. **Gaming Contracts — Legislation — Judgments of Other States — Conflict of Laws — Res Judicata — Constitutional Law — "Full Faith and Credit."**

    Where, in an action pending in the courts of this State to recover on a judgment in a sister State, the Legislature amended our statute on gaming by adding thereto: "Nor shall the courts of this State have any jurisdiction to entertain any suit or action brought upon a judgment based upon any such contract," there can be no valid objection to such legislation on the ground that same impairs the obligation of contracts, and it would seem that no such objection can be made under Art. IV, secs. 1 and 2 of the Federal Constitution, "the full faith and credit clause," etc., if it is admitted or clearly appears that the judgment sued on was rendered on a transaction expressly forbidden by our statutes on gaming, and that the question was not raised, investigated or determined in the courts of the State in which the judgment was originally rendered.

8. **Same.**

    On the facts indicated, if it appeared that the court of the sister State rendering the judgment had jurisdiction of the cause and the parties, and that the question whether the transaction sued on was a gaming transaction had been expressly raised and determined adversely in that Court, in such case under Art. IV, sec. 1, the judgment of the sister State would conclude the parties, the terms and very purpose of the article being to prevent all question in the courts of one State of the Union as to the validity of a cause of action which had been presented and decided in the courts of another.

9. **Same—Issues—Fraud—Jurisdiction.**

    In the present case, being an action to recover on a judgment rendered in favor of plaintiff and against defendant in the State of Virginia, it appearing that personal service of process on defendant was had in the State of Virginia, and that said defendant appeared and by proper pleas raised the question whether the claim declared on arose on a gaming transaction and on inquiry duly had the question resolved against defendant, the parties are thereby concluded as to such question; and it appearing, further, that the plea of fraud is not sufficiently averred, the only remaining issue arising on the pleadings is on the jurisdiction of the court, and the cause is sent back for the proper decision of such issue.

APPEAL from *O. H. Allen, J.,* June Term, 1909, of EDGE-COMBE.

Civil action, heard as on demurrer to the answer. The plaintiff instituted the action to recover on a judgment of the Corporation or Hustings Court of the city of Manchester and State of Virginia, in the sum of $1,848.25, with interest and cost, and filed his complaint, alleging the rendition of the judgment in a court of general jurisdiction, and annexing a transcript of same, properly certified, and showing that the plaintiff had instituted said action in the court in Virginia against the present defendant; that personal service was obtained on defendant in said city of Manchester, and defendant appeared in said court and answered or entered pleas in bar of plaintiff's demand, among other pleas, that such demand was on a wagering contract or by reason of a deal in cotton futures between them, and same was prohibited by law and no recovery could be had thereon; that on issues framed there was verdict and judgment for plaintiff for the amount indicated.

In the present action the defendant appeared and answered, denying that the Corporation Court of the city of Manchester was a court of general jurisdiction, or that it ever had acquired any jurisdiction over the defendant or the subject-matter of the demand. In this connection the answer further averred, in effect, that defendant was and since always had been a citizen and resident of Edgecombe County and State of North Carolina, and plaintiff was and always had been a citizen and resident of Norfolk County and State of Virginia; that service was obtained on defendant while he was temporarily in the city of Manchester attending a reunion of Confederate veterans, and that said Corporation Court, in which the judgment was obtained, had never had or acquired any jurisdiction either over defendant's person or the subject-matter of the litigation, and that said judgment was void for lack of such jurisdiction.

In addition, the defendant made answer, styled by said defendant a further answer, averring that said judgment was obtained on a gambling debt, arising by reason of a deal in cotton futures, and that said demand was illegal and any and all recovery thereon was forbidden by public policy and by express provision of our statute laws; and, further, that said judgment had been obtained by means of fraudulent, false and material and pertinent testimony, etc.

At March Term, 1908, the plaintiff replied to the further answer of defendant, and alleged that all of the matters and things contained in said further answer were concluded by the judgment of the Virginia court, and pleaded same as an estoppel

of record; and at April Term, 1909, the plaintiff demurred to said further answer, and, the cause coming on for hearing at the June Term of the court, his Honor gave judgment sustaining the demurrer, in form as follows:

This cause coming on to be heard, and being heard by the court, and the same being heard and considered by the court, upon the pleadings filed in said cause, the complaint, answer and demurrer to the answer, and the court being of opinion that the demurrer is well taken, and the same is hereby sustained: Now, on motion of counsel for plaintiff, it is ordered and adjudged that the plaintiff do recover of the defendant the sum of $1,898.99 and interest, as alleged in the complaint, and cost of this action, to be taxed by the clerk."

From said judgment defendant excepted and appealed.

*J. R. Gaskill, J. K. Rawley* and *F. S. Spruill* for plaintiff.
*G. M. T. Fountain* for defendant.

HOKE, J., after stating the case: The pleading on the part of plaintiff, styled a reply, and the demurrer, are both addressed, in terms, to the defendant's "further answer." Ordinarily this is irregular and not permissible. Encl. Pl. & Pr., vol. 6, p. 382. As this further answer, however, is designed and intended to set up two defenses—one, that the judgment was rendered on a demand growing out of a gambling transaction, and that same was procured by fraud—the course pursued in this instance seems to be sanctioned by the Code, sec. 485, and, in any event, as this reply only amounted, in effect, to a demurrer, the court below very properly treated the demurrer as the only additional pleading on the part of plaintiff; and, being of opinion that the position presented was well taken and that the same went to the entire merits of the defense as contained in the answer, his Honor entered judgment sustaining the demurrer and awarding plaintiff recovery for the amount demanded. Assuming that the Corporation Court of Manchester, Va., had jurisdiction of the cause and of the parties, we concur in the ruling of the court below that the matter contained in the former answer does not set forth any valid defense to plaintiff's claim.

As we have said, this further answer alleges that the original demand was on a gambling contract; that a recovery thereon is forbidden, both by our public policy and our statute law, and contends that this defense is now open to the defendant, notwithstanding the rendition of the Virginia judgment, but the question presented has been recently decided against the defendant's position by the Supreme Court of the United States, the final

arbiter in such matters, in the case of *Fauntleroy v. Lum,* 210 U. S., 230.

In that case the pertinent facts are thus summarized in the opinion of the Court, delivered by *Associate Justice Holmes:* "This is an action upon a Missouri judgment, brought in a court of Mississippi. The declaration set forth the record of the judgment. The defendant pleaded that the original cause of action arose in Mississippi out of a gambling transaction in cotton futures; that he declined to pay the loss; that the controversy was submitted to arbitration, the question as to the illegality of the transaction, however, not being included in the submission; that an award was rendered against the defendant; that thereafter, finding the defendant temporarily in Missouri, the plaintiff brought suit there upon the award; that the trial court refused to allow the defendant to show the nature of the transaction, and that by the laws of Mississippi the same was illegal and void, but directed a verdict, if the jury should find that the submission and award were made and remained unpaid; and that a verdict was rendered and the judgment in suit entered upon the same. The plea was demurred to on constitutional grounds, and the demurrer was overruled, subject to exception. Thereupon replications were filed, again setting up the Constitution of the United States (Article IV, p. 1), and were demurred to. The Supreme Court of Mississippi held the plea good and the replications bad, and judgment was rendered for the defendant. Thereupon the case was brought here." And on these facts it was held that—

"1. A judgment is conclusive as to all the *media concludendi,* and it cannot be impeached, either in or out of the State, by showing that it was based on a mistake of law.

"2. A judgment of a court of a State in which the cause of action did not arise, but based on an award of arbitration had in the State in which the cause did arise, is conclusive, and, under the full faith and credit clause of the Federal Constitution, must be given effect in the latter State, notwithstanding the award was for a claim which could not, under the laws of that State, have been enforced in any of its courts."

It was contended before us that the decision referred to is not conclusive in this case, because it proceeds on the assumption that the defense there insisted on could not be made available in the State of Missouri, where the judgment was rendered, and if it had been otherwise the case would have been differently decided; the argument being that the clause in the National Constitution controlling the matter (Article IV, sec. 1) only re-

151—16

quires that the judgments of a sister State shall be given that faith and credit which they are allowed in the State where rendered; that, in Virginia, courts of equity will relieve against a judgment had on a gaming transaction, and, this being true, the defense should be made available in the courts of North Carolina. The defendant here takes a correct position as to the meaning and proper application of this clause of the Federal Constitution. As shown in the case we are now discussing (*Fauntleroy v. Lum, supra*), many authoritative decisions so hold (*Christmas v. Russell*, 72 U. S., 290; *Hampton v. McConnel*, 16 U. S., 234), and it has been embodied in the public statutes as the correct legislative interpretation of the constitutional provision, as follows: "And said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." U. S. Comp. Stat., vol. 1, sec. 905.

But the argument is at fault in the premise that the courts of equity in Virginia would interfere for defendant's protection on the facts presented in the case before us. True, in the case to which we were referred by counsel (*White v. Washington,* 46 Va., 645) it was held, in accordance with doctrine very generally accepted, that, in the absence of any fault or negligence on the part of defendant, a court of equity would relieve against a judgment obtained under such circumstances of surprise and fraud, that it would be clearly unjust and unconscientious to insist on its enforcement. 23 Cyc., pp. 989, 990, and authorities cited. And it was held, further, that in the case of a gambling transaction, and by correct interpretation of the Virginia statutes on the subject, equity would relieve where a judgment was rendered by default or under other circumstances showing that no inquiry was had on the subject; and this, though opportunity to defend had been afforded; but this very decision referred to and relied on also holds that if a defendant appeared and raised the question by proper pleas, and judgment was rendered after investigation had, in such case the judgment would conclude while it stood unreversed and unassailed in the court where same was rendered.

Speaking to this question, *Baldwin, J.*, delivering the opinion of the Court, among other things, said: "It must be admitted, however, that in an action founded upon a gaming promise or security, if the defendant elects to make his defense at law, and upon a full and fair trial of the question in that forum a verdict is rendered against him, he cannot be permitted to renew the controversy, upon adverse testimony, in a court of equity; for

if this were allowed, it would, in effect, be an appeal from the verdict of a jury. And yet, notwithstanding such election, if the defendant has been surprised at law, by reason of some fraud, misfortune or accident, which has prevented him from having a full and fair trial before the jury, he may still resort for redress to a court of equity. Nor will he be precluded from doing so by its appearing that he had an adequate opportunity of obtaining a new trial by application to the court of law. The case of a gaming promise or security is an exception to the general rule on the subject, that rule being derived from the obligation of the party, in most cases, to avail himself of his opportunity to defend himself at law; whereas, in the case of a gaming promise or security, he is under no such obligation."

In this case, as stated, the defendant was served with process within the State of Virginia; he appeared, and by full and proper pleas raised the issue that the plaintiff's demand arose out of a gaming transaction, and on investigation and trial had the question was resolved against him and verdict and judgment entered for plaintiff.

Under the case of *White v. Washington, supra,* and other decisions of like effect, unless more was shown, this concludes the parties in the State of Virginia, and, under the Federal Constitution, the same effect must be allowed the proceedings when offered here.

And this, too, is the answer to another position urged by defendant, that the Legislature of North Carolina, pending the present action, and before judgment rendered in this State, has amended our statute on gaming (Revisal 1905, sec. 1689) by adding thereto: "Nor shall the courts of this State have any jurisdiction to entertain any suit or action brought upon a judgment based on any such contract." Laws 1909, ch. 853. While judgments are sometimes said to be contracts of record, and are regarded as possessing some of the incidental features of contracts, particularly in reference to joinder of causes of action and other regulations affecting the jurisdiction of courts concerning them, they are not in reality contracts. lacking as they do the great essential of all contracts, mutuality of consent; and it is well established that they are not considered contracts in reference to the clause in the Federal Constitution which forbids that contracts should be impaired by State legislation, and there are notable decisions upholding legislation affecting pending litigation, both before and after judgment rendered. *Evans v. McFadden,* 105 Fed., 293, affirmed on appeal to Supreme Court of the United States, 185 U. S., 505; *Sprott v. Reid,* 39 Greene (Iowa), 549; Freeman on Judgments, sec. 4;

Black on Judgments, secs. 7-11.   No valid objection, therefore, can be made to this legislation because it was enacted pending litigation.

Again, in *Provision Co. v. Davis,* 191 U. S., 373, the Supreme Court of the United States has held that in the case of a foreign corporation, complainant, a State, was not required, under Article IV, sec. 1, the full faith and credit clause, to provide a court having jurisdiction to entertain an action on a judgment rendered in its favor in another State.   Whether by reason of section 2, Article IV; that "the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States," a like ruling would have obtained if the complainant had been an individual citizen, was not determined.   It will be noted that the North Carolina legislation in the present case, withdrawing causes of this character from the jurisdiction of her courts, applies to all persons, both resident and nonresident, and to all judgments, both domestic and foreign; and under the various authoritative decisions construing these terms, "privileges and immunities," in our National Constitution, notably *Blake v. McClung,* 172 U. S., 239; *Butchers Union Co. v. Crescent Citz. Co.,* 111 U. S., 746; *Connor v. Elliott,* 59 U. S., 593, there would seem to be no reason for making a distinction between actions on judgments in favor of foreign corporations and individual citizens, and no recognized principle that would prevent a State Legislature from withdrawing the jurisdiction of its courts from an action to enforce judgments, when it was admitted or clearly appeared that recovery had been awarded on a transaction forbidden by its public policy or statute law, and that the matter had not been raised, considered or determined in the courts of the original forum.

The question is expressly reserved in *Provision Co. v. Davis, supra,* and is not necessarily determined in *Fauntleroy v. Lum, supra,* as that decision is chiefly made to rest on the fact that the legislation there presented was addressed to the rights of the parties and the *duty* of the domestic courts concerning them, and not to their jurisdiction and power, though the opinion *arguendo* gives decided intimation against the validity of such legislation, except to the extent that like defense and inquiry would be open to defendant in the courts of the sister State where the judgment was obtained.   But, however this may be, we are clearly of opinion that the legislation relied upon by defendant for his protection is not available for that purpose on the facts presented here, and for the reason indicated, that on pleas properly entered in the Virginia court the very question was raised whether the plaintiff's demand arose out of a gaming

transaction, and on investigation had was determined against the defendant; and when this occurs, as indicated in *Fauntleroy v. Lum, supra,* an erroneous ruling of the trial court would be an error of law, to be corrected only by some procedure 'in the court rendering the judgment; and while the judgment stands unreversed and unassailed, it comes directly within the protection of Article IV, sec. 1, its recognized and established purpose being to prevent any question in the domestic court as to the validity of a claim which had been considered and adjudged in the courts of another State.

Defendant further insists that the demurrer to his further answer should be overruled because the same contains a valid and sufficient plea of fraud, as follows: "That plaintiff obtained said judgment upon fraudulent, false, material and pertinent testimony offered by him." Some of the appellate courts of our sister States whose decisions are always received with the greatest respect and consideration have held that the plea of fraud is never available as a defense to a judgment rendered by the courts of another State, when such courts had jurisdiction of the cause and the parties, basing such ruling upon decisions of the Supreme Court of the United States construing Article IV, sec. 1, of the Federal Constitution. As in *Mooney v. Hinds,* 160 Mass., 469, citing and relying on *Christmas v. Russell,* 72 U. S., 290; *Maxwell v. Stewart,* 89 U. S., 77; *Hanley v. Donaber,* 116 U. S., 1-4; *Simmons v. Saul,* 138 U. S., 439-459.

Undoubtedly, if the cases referred to correctly interpret the decisions of the Supreme Court of the United States, they must be followed here and elsewhere, for such decisions are final and controlling on the question presented; but, while there are many expressions in the opinions of our highest Court which seem to sanction the position contended for, we are of opinion that no authoritative decision of that tribunal directly so holds, and that the great weight of well-considered authority is to the effect that in States such as ours, where all distinctions between actions at law and suits in equity have been abolished and relief is administered in one form of action, fraud in the procurement of a judgment, when properly pleaded, is available as a defense to an action on a judgment recovered in a sister State, though such State may have had jurisdiction of the cause and the parties; and that this term, "fraud in the procurement of a judgment," should and does include all such facts and circumstances as would induce and enable the courts of equity or courts having jurisdiction of the matter in the State where the judgment was rendered to interfere to prevent the enforcement of an unconscionable recovery.

We have recently considered this question, and so held in the case of *Levin v. Gladstein,* 142 N. C., 482, and the decision in that case is well sustained by authority in this and other jurisdictions. *Miller v. Leach,* 95 N. C., 229; *Gray v. Richmond Bic. Co.,* 167 N. Y., 348; *Davis v. Headley,* 22 N. J. Eq., 115; *Paine v. Oshea,* 84 Mo., 129; *Eaton v. Hartz,* 6 Neb., 419; Black on Judgments, secs. 917, 918; Freeman on Judgments, sec. 576.

There are decisions to the effect that when a judgment has been procured by means of an ordinary perjury on the part of a witness, without more, this does not present a case for the interference of a court in the exercise of its equitable powers, and it is very generally held that this plea of fraud, considered as available, does not apply to fraud anterior to the judgment, or rather the inquiry, and which by proper effort could have been asserted by way of original defense; but wherever, as stated, without fault or neglect on part of defendant, there has been fraud successfully practiced in procuring a judgment, and under circumstances that would authorize the courts of the State where same was rendered to interfere by action to stay the enforcement of an unconscionable recovery, the same defense can in some way be made available when the judgment is made the basis of an action in another State.

Referring to the decisions of the Supreme Court of the United States cited and usually relied upon to support a contrary position: In *Christmas v. Russell, supra,* the judge delivering the opinion evidently had in mind the plea of fraud when attempted to be set up in an action at law, and when by the form of procedure it could not be regarded as a direct proceeding to impeach the judgment; and, as pointed out in *Levin v. Gladstein, Associate Justice Clifford,* for the court, said: "Domestic judgments, under the rules of the common law, could not be collaterally impeached or called in question if rendered in a court of competent jurisdiction. It could only be done directly by writ of error, by petition for a new trial or by *bill of chancery.*"

And the same may be said in the case of *Maxwell v. Stewart, supra,* where the decision of *Christmas v. Russell* is referred to as authority and without further comment or inquiry; and, as further pointed out in *Levin v. Gladstein,* the question was really not presented or involved in the case of *Hanley v. Donaghue, supra,* and in the case of *Simmons v. Paul, supra,* some of the objections to the judgment were on matters of form, where only a motion in the cause could be considered as a direct proceeding to impeach it, and on the further and substantial objection the decision was properly made to rest on the fact that

the judgment in question was an adjudication of probate and the granting of letters of administration, citing and relying on the case of *Broderick's will,* 88 U. S., 503-512, in which it was held that, owing to the peculiar and exclusive jurisdiction of courts of probate, courts of equity in the exercise of their ordinary jurisdiction had no power as a general rule to entertain suits to set aside or modify the decrees of these courts in such matters, and it may be that the Massachusetts decision, to which we were referred, might be upheld on like ground. In North Carolina, however, as heretofore indicated, where only one form of action is now recognized, and in cases like the one here presented, whenever a final judgment is sued on, and the answer properly sets up facts impeaching the judgment, this, as shown in *Houser v. Bonsal,* 149 N. C., 51, is to be considered a direct and proper proceeding to impeach the judgment; and if on the hearing it is shown that the judgment, though rendered in another State, was procured by fraud and under circumstances which would impel the courts of such State by independent action to arrest its enforcement, this defense will be sustained here and the defendant afforded proper relief. The defense of fraud in procuring the judgment was therefore open to defendant, but is not available for his protection on these pleadings, because not sufficiently and properly alleged.

This question of fraud involves an issue of fact, and it is no sufficient averment to allege in general terms that a judgment was procured by fraud, but the facts constituting the alleged fraud must be set out with sufficient certainty and fullness to indicate the defense and apprise the opposing party of what he is called on to answer. This is not done in the further answer of defendant, and the general allegation designed and intended to raise the issue of fraud must be held sufficient and was properly disregarded in the court below. *Ritchie v. McMullen,* 159 U. S., 235; 9 Ency. Pl. & Pr., 687.

While we agree with the judge below that the plaintiff's demurrer should be sustained, we do not concur in the ruling of his Honor to the effect that the demurrer went to the merits of the entire answer, and that in sustaining it the plaintiff was entitled to recover the sum demanded. From a perusal of this answer, it appears that in the first or first portion of it is contained a denial of jurisdiction on the part of the Corporation and Hustings Court in which the judgment was obtained. While there is some difference in the decisions as to the power of a domestic court to entertain the plea of fraud to a judgment rendered in a sister State, there is no such diversity as to a plea averring lack of jurisdiction. This is always open to defendant,

and both as to the parties and subject-matter, and even when
the jurisdictional facts are recited in the judgment. *Thompson
v. Whitman,* 85 U. S., 457; *Miller v. Leach, supra; Gilman v.
Gilman,* 126 Mass., 26. There is no merit in the allegation. in
this first answer, to the effect that personal service was obtained
when defendant was temporarily and of his own volition in the
city of Manchester (*Harris v. Balk,* 198 U. S., 213), but the
first answer contains a denial that the Corporation and Hustings
Court of the city of Manchester had jurisdiction either of de-
fendant's person or the subject-matter of the action; and in this
connection avers, further, that plaintiff is a citizen and resident
of Norfolk County, Virginia, and that defendant is now and
always has been a citizen and resident of North Carolina. True,
there is an averment in plaintiff's complaint that the Corpora-
tion· Court is one of general jurisdiction, but this, too, is denied
in the answer; and, while we are told by *Baron Comyns* that the
Court of Hustings is the most ancient and eminent court of the
city of London, such courts do not seem to have had like dignity
in the provinces, nor even to have been so termed, and all of
these Corporation Courts were regarded as courts of inferior and
limited jurisdiction (Lewis' Blackstone Book 3, pp. 80-81), and
this assuredly is *prima facie* the modern view as to their juris-
diction. Abbott·Munic. Corporations, sec. 585, and authorities
cited.

It may be that the Constitution and laws of the State of Vir-
ginia have conferred on these courts general jurisdiction to hear
and determine claims of this nature, as the complaint alleges,
but at present we are not so advised, and, denial having been
made, the issue must be submitted and determined as a question
of fact. *Hilliard v. Outlaw,* 92 N. C., 266; *Hooper v. Moore,*
50 N. C., 130.

On the whole matter, we are of opinion, and so hold, that as
to matters set out in the further answer the demurrer of plain-
tiff was properly sustained, and as to any defense therein the
defendant is concluded, but that an issue is raised by the plead-
ings, in this State an issue of fact, as to whether, under the Con-
stitution and laws of Virginia, and on the facts appearing in
that trial, the Corporation Court of Manchester had jurisdic-
tion to hear and determine the matters in litigation and render
the judgment on which the present suit is brought.

The opinion will be certified down, that a trial of the issue
indicated may be had.

Error.