MGM DESERT INN, INC. D/B/A DESERT INN HOTEL & CASINO, PLAINTIFF
v. WILLIAM HERBERT HOLZ, DEFENDANT

No. 913SC41

(Filed 17 December 1991)

### Constitutional Law § 153 (NCI4th); Judgments § 51 (NCI3d) — foreign judgment — gambling debt — full faith and credit

No exception to the full faith and credit clause exists to prohibit enforcement in North Carolina of a Nevada judgment against defendant predicated on a gambling debt notwithstanding language in the anti-gambling statutes and the Uniform Enforcement of Foreign Judgments Act suggesting otherwise. N.C.G.S. §§ 1C-1708, 16-3.

### Am Jur 2d, Judgments §§ 1235, 1244.

APPEAL by defendant from judgment entered 30 November 1990 by *Judge Herbert O. Phillips, III*, in CARTERET County Superior Court. Heard in the Court of Appeals 10 October 1991.

*Bennett, McConkey, Thompson, and Marquardt, P.A., by Dennis M. Marquardt, for plaintiff-appellee.*

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C.R. Wheatly, Jr., for defendant-appellant.*

PARKER, Judge.

In this civil action under the Uniform Enforcement of Foreign Judgments Act, N.C.G.S. §§ 1C-1701 to 1708 (1991), ("uniform act") defendant appeals from summary judgment entered in favor of plaintiff. We affirm the judgment of the trial court.

The pleadings, answers to interrogatories and affidavits before the trial court show that in June 1989 defendant travelled to Las Vegas, Nevada, where he visited plaintiff's casino. According to defendant's affidavit, on 7 June he "commenced to gamble with dice, the dice, or crap table, provided by the Plaintiff." Defendant lost all his cash, $2,700.00, but was advised by plaintiff's agent that credit was available to him if he would make application. Defendant went to an office on plaintiff's premises, completed some forms and was told to return the next day to determine if credit would be available to him. On 8 June defendant returned to the

casino and was told credit was available; all he had to do was sign a marker signifying the amount of credit he desired. On that same day, over the course of several hours during which he lost $20,000.00 at the dice table, defendant signed ten markers, each in the amount of $2,000.00.

Although defendant paid some of this debt, plaintiff sued for the unpaid balance; and in April 1990 judgment by default was entered against defendant in the district court of Clark County, Nevada. The default judgment was in the amount of $14,000.00, with prejudgment interest from 8 June 1989 to the date of entry of judgment at the statutory rate, costs of $104.00, and reasonable attorney's fees of $3,500.00; the total of all these sums was to bear interest at the statutory rate from 16 March 1990 until the judgment was satisfied.

Plaintiff subsequently sued in North Carolina on the Nevada default judgment. Pursuant to the uniform act, plaintiff filed a copy of the judgment in the office of the Clerk of Carteret Superior Court, see N.C.G.S. § 1C-1703 (1991), and on 12 July 1990, pursuant to N.C.G.S. § 1C-1704, served notice of this filing on defendant. On 19 July 1990 defendant filed a motion for relief from judgment and notice of defense pursuant to N.C.G.S. § 1C-1705. In this pleading defendant alleged (i) the default judgment was void as being contrary to the public policy of North Carolina and (ii) the uniform act prohibits enforcement of foreign judgments based on claims contrary to the public policies of North Carolina. Defendant also moved for dismissal of the proceeding pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure. Plaintiff's reply alleged that the federal and state constitutions require the enforcement in North Carolina of foreign judgments. Both parties moved for summary judgment; plaintiff's motion was granted and defendant's was denied.

On appeal defendant contends that (i) plaintiff's claim, being predicated on a gaming debt, is contrary to the public policies of North Carolina, (ii) plaintiff was unable to raise this defense in Nevada, whose laws permit enforcement of such debts, (iii) plaintiff's action is barred by the uniform act, and (iv) the superior court lacked jurisdiction to enforce a foreign judgment predicated on a gaming debt. While we agree that gaming debts incurred in North Carolina are not enforceable in the courts of this state, we find defendant's remaining arguments unpersuasive.

General Statutes, Chapter 16, provides as follows:

All wagers, bets or stakes made to depend . . . upon any gaming by lot or chance . . . shall be unlawful; and all contracts, judgments . . . and assurances for and on account of any money . . . so wagered, bet or staked, or to repay, or to secure any money . . . lent or advanced for [such] purpose . . . shall be void.

N.C.G.S. § 16-1 (1983). Similarly, futures contracts

shall be utterly null and void; and no action shall be maintained . . . to enforce any such contract, whether . . . made in or out of the State . . . nor shall any party to any such contract . . . have or maintain any action or cause of action on account of any money . . . paid or advanced . . . on account of such contract . . . nor shall the courts of this State have any jurisdiction to entertain any suit or action brought upon a judgment based upon any such contract.

N.C.G.S. § 16-3 (1983).

The Uniform Enforcement of Foreign Judgments Act provides, "The provisions of this Article shall not apply to foreign judgments based on claims which are contrary to the public policies of North Carolina." N.C.G.S. § 1C-1708 (1991).

The federal constitution provides, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State; And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const..art. IV, § 1. Congress subsequently prescribed the manner and effect of such judicial proceedings thus:

The records and judicial proceedings of any court of any such State . . . or copies thereof, shall be proved or admitted in other courts within the United States . . . by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such . . . judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court

within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

28 U.S.C.A. § 1738 (West 1966) (formerly 28 U.S.C. § 687).

In *Fauntleroy v. Lum*, 210 U.S. 230, 52 L. Ed. 1039 (1908), the United States Supreme Court considered whether the State of Mississippi had to enforce a Missouri judgment based on a gambling transaction in cotton futures. The original cause of action arose in Mississippi, where such transactions were illegal and void. Nevertheless the matter was submitted to arbitration in Mississippi, the question of illegality not being included in the submission, and the result was an award against defendant. Finding defendant in Missouri, plaintiff sued on the Mississippi award. The jury found for plaintiff and judgment was entered against defendant. Plaintiff then sued in Mississippi to enforce the Missouri judgment. *Id.* at 234, 52 L. Ed. 1041.

On appeal defendant argued that since the law of Mississippi made dealing in futures a misdemeanor and provided that futures contracts would not be enforced by that state's courts, the Mississippi court was deprived of jurisdiction. *Id.* The Court, however, found this argument unpersuasive. Instead the Court framed the issue as "whether the illegality of the original cause of action in Mississippi can be relied upon there as a ground for denying a recovery upon a judgment of another State." *Id.* at 236, 52 L. Ed. 1042. Citing the predecessor of 28 U.S.C. § 1783, the Court said

> Whether the award would or would not have been conclusive, and whether the ruling of the Missouri court upon that matter was right or wrong, there can be no question that the judgment was conclusive in Missouri on the validity of the cause of action. A judgment is conclusive as to all the *media concludendi*; and . . . it cannot be impeached either in or out of the state by showing that it was based upon a mistake of law. Of course, a want of jurisdiction over either the person or the subject-matter might be shown. But, as the jurisdiction of the Missouri court is not open to dispute, the judgment cannot be impeached in Mississippi even if it went upon a misapprehension of the Mississippi law.

*Id.* at 237, 52 L. Ed. at 1042 (citations omitted).

In *Mottu v. Davis*, 151 N.C. 237, 65 S.E. 969 (1909), plaintiff instituted an action in North Carolina on a Virginia judgment

## MGM DESERT INN v. HOLZ

[104 N.C. App. 717 (1991)]

predicated on a gaming debt. Defendant filed two answers to plaintiff's complaint; the second ("further") answer raised the defense that the Virginia judgment was rendered on a demand arising from a gambling transaction. The Court stated

> As we have said, this further answer alleges that the original demand was on a gambling contract; that a recovery thereon is forbidden, both by our public policy and our statute law, and contends that this defense is now open to the defendant, notwithstanding the rendition of the Virginia judgment, but the question presented has been recently decided against the defendant's position by the Supreme Court of the United States, the final arbiter in such matters, in *Fauntleroy v. Lum*, 210 U.S., 230.

*Mottu v. Davis*, 151 N.C. at 240, 65 S.E. at 970-71.

After *Fauntleroy* the United States Supreme Court considered whether a federal district court in Illinois should entertain jurisdiction of an action on a valid Wisconsin judgment predicated on income tax due from defendant to the State of Wisconsin. *Milwaukee County v. White Co.*, 296 U.S. 268, 80 L. Ed. 220 (1935). The Court considered the narrow question of whether the courts of one state, even though not required to entertain a suit to recover taxes levied under the statutes of another state, "must nevertheless give full faith and credit to judgments for such taxes." *Id.* at 275, 80 L. Ed. at 227. The Court stated

> A cause of action on a judgment is different from that upon which the judgment was entered. In a suit upon a money judgment for a civil cause of action the validity of the claim upon which it was founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon a specialty. Recovery upon it can be resisted only on the grounds that the court which rendered it was without jurisdiction; or that it has ceased to be obligatory because of payment or other discharge; or that it is a cause of action for which the state of the forum has not provided a court, unless it is compelled to do so by the privileges and immunities clause; or possibly because procured by fraud.

*Id.* at 275-76, 80 L. Ed. 227 (citations omitted).

In the case under review defendant argues that the statutory denial of jurisdiction to North Carolina courts to hear suits on judgments based on gaming debts or futures contracts has been upheld as an exception to the application of the full faith and credit clause described by the Court in *Milwaukee County* as "a cause of action for which the state of the forum has not provided a court." *See Lockman v. Lockman*, 220 N.C. 95, 16 S.E.2d 670 (1941); *Cody v. Hovey*, 219 N.C. 369, 14 S.E.2d 30 (1941). We disagree.

Admittedly, language in *Lockman* and *Cody* suggests such an exception exists; but after these cases were decided, the United States Supreme Court citing *Fauntleroy*, reiterated that virtually no exceptions exist to the granting of full faith and credit to the judgments of sister states:

> From the beginning this Court has held that these provisions have made that which has been adjudicated in one state res judicata to the same extent in every other. Even though we assume for present purposes that the command of the Constitution and the statute is not all-embracing, and that there may be exceptional cases in which the judgment of one state may not override the laws and policy of another, this Court is the final arbiter of the extent of the exceptions. And we pointed out in *Williams v. North Carolina* that "the actual exceptions have been few and far between. . . ."

> We are aware of no such exception in the case of a money judgment rendered in a civil suit. Nor are we aware of any considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to such a judgment outside the state of its rendition.

> The constitutional command requires a state to enforce a judgment of a sister state for its taxes or for a gambling debt . . . .

*Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 438-39, 88 L. Ed. 149, 154-55 (1943) (citations and footnote omitted), *reh'g denied*, 321 U.S. 801, 88 L. Ed. 1088 (1944).

Similarly, this Court has stated

The "Fauntleroy Doctrine" was followed by our own Supreme Court in *Mottu v. Davis*, 151 N.C. 237, 65 S.E. 969 (1909). . . .

Defendant points to numerous decisions in which we have stated that a judgment of a court in another state may be attacked on grounds of lack of jurisdiction, fraud in the procurement, *or as being against public policy*. Although we have so asserted, it is rare that we will disregard a sister state judgment on public policy grounds. The *Fauntleroy* decision, as noted by a recent commentator, "narrows almost to the vanishing point the area of state public policy relief from the mandate of the Full Faith and Credit Clause—at least so far as the judgments of sister states are concerned." One exception to the full faith and credit rule is a penal judgment; a state need not enforce the penal judgment of another state. Another exception is when the judgment sought to be enforced is against the public policy of the state where it was initially rendered. The exceptions, however, are few and far between. In general, we are bound by the Full Faith and Credit Clause to recognize and enforce a valid judgment for the payment of money rendered in a sister state.

*FMS Management Systems v. Thomas*, 65 N.C. App. 561, 563-64, 309 S.E.2d 697, 699 (1983) (emphasis in original, citations omitted) (quoting S.W. Wurfel, *Recognition of Foreign Judgments*, 50 N.C.L. Rev. 21, 43 (1971)), *aff'd per curiam*, 310 N.C. 742, 314 S.E.2d 545 (1984).

In light of the foregoing principles we hold that notwithstanding language in the anti-gambling statutes and uniform act suggesting otherwise, no exception to the full faith and credit clause exists to prohibit enforcement in North Carolina of the Nevada judgment against defendant. Defendant has raised no question as to the jurisdiction of the Nevada district court over either his person or the original claim against him. "[S]ummary judgment will be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that . . . any party is entitled to a judgment as a matter of law.' N.C.R. Civ. P. 56(c)." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). As a matter of law, upon plaintiff's action properly instituted under the Uniform Enforcement of Foreign Judgments Act, this state

cannot refuse to enforce the Nevada judgment against defendant, even though predicated on a gaming debt. Therefore, we hold the trial court did not err in granting summary judgment in favor of plaintiff.

Affirmed.

Judges WELLS and WYNN concur.