LORIS M. PIEPER v. GARY L. PIEPER

No. 9126DC1111

(Filed 2 February 1993)

1. **Divorce and Separation § 564 (NCI4th)— Iowa judgment for child support beyond age eighteen—judgment entitled to full faith and credit**

    The enforcement of an Iowa judgment for continued child support payments beyond the age of eighteen did not violate the public policy of North Carolina, and the trial court correctly found the Iowa judgment entitled to full faith and credit in this State.

    **Am Jur 2d, Divorce and Separation §§ 1022, 1130.**

    **Divorce decrees and full faith and credit—Supreme Court cases. 14 L. Ed. 2d 917.**

2. **Divorce and Separation § 564 (NCI4th)— dismissal of prior URESA action—money judgment obtained in Iowa—prior dismissal not res judicata—money judgment entitled to full faith and credit**

    The trial court's dismissal of plaintiff's prior URESA action was not res judicata in this subsequent action to enforce a money judgment where plaintiff's earlier action sought to enforce an Iowa child support order requiring support payments past the child's majority; that action was dismissed for failure to state a claim upon which relief could be granted; plaintiff then returned to Iowa to seek a final money judgment based on the previous Iowa order; defendant was at liberty to present any defenses to the subsequent Iowa action, but failed to do so; and plaintiff was then free to return to North Carolina to seek enforcement of that judgment pursuant to the Full Faith and Credit Clause of the United States Constitution.

    **Am Jur 2d, Divorce and Separation § 1130.**

    **Divorce decrees and full faith and credit—Supreme Court cases. 14 L. Ed. 2d 917.**

3. **Divorce and Separation § 418 (NCI4th)— past due child support—foreign judgment—no credit for sums given directly to child**

An Iowa judgment for past due child support was entitled to full faith and credit as to the amount owed up until the time of the judgment, and the trial court was without authority to allow defendant credit toward the judgment for sums given to the child outside the Iowa order even though Iowa law would not allow a credit for direct payments made by defendant but North Carolina recognizes this defense. N.C.G.S. § 50-13.10(a).

**Am Jur 2d, Divorce and Separation §§ 1130, 1133.**

**Divorce decrees and full faith and credit—Supreme Court cases. 14 L. Ed. 2d 917.**

Appeal by defendant from judgment entered 21 May 1991 by Judge L. Stanley Brown in Mecklenburg County District Court. Heard in the Court of Appeals 21 October 1992.

*Waggoner, Hamrick, Hasty, Monteith, Kratt & McDonnell, by Richard L. Huffman, for plaintiff-appellant.*

*Petree Stockton & Robinson, by David B. Hamilton and B. David Carson, for defendant-appellant.*

WYNN, Judge.

Plaintiff and defendant were divorced on 19 March 1975 in Iowa. Plaintiff was awarded custody of the parties' son, Mark Pieper, born of the marriage on 7 November 1965. Upon divorce, an Order was entered by the Iowa Courts ordering defendant to pay to plaintiff the sum of $65.00 per week in child support until Mark reached the age of eighteen. Defendant made such payments until Mark's eighteenth birthday.

On 20 December 1983, plaintiff petitioned the Iowa Courts for an increase in, and continuance of, child support for Mark. On 1 August 1984, an Order was entered by the Iowa Courts increasing the amount of child support to the sum of $85.00 per week and ordering that defendant make such payments directly through the courts until Mark reached the age of twenty-two, so long as he in good faith attended a college, university or area

school. Defendant appealed the Iowa Order to the Iowa Supreme Court which affirmed the trial court's judgment. By Order dated 1 October 1985, the $85.00 per week child support order was made retroactive to 20 December 1983, the date plaintiff first filed her application seeking an increase and continued child support.

Defendant made no child support payments pursuant to the above Orders. In 1986, plaintiff petitioned for Registration and Confirmation in North Carolina pursuant to N.C. Gen. Stat. Ch. 52A, the Uniform Reciprocal Enforcement of Support Act (URESA), seeking to enforce the Iowa Orders in North Carolina, where defendant has resided since 1975. Defendant moved to vacate the registration and to dismiss the action. By Order dated 29 July 1987 the district court granted defendant's motion to dismiss. Plaintiff appealed the dismissal to the North Carolina Court of Appeals and to the North Carolina Supreme Court, both of which affirmed the trial court's action. *Pieper v. Pieper*, 90 N.C. App. 405, 368 S.E.2d 422, *aff'd*, 323 N.C. 617, 374 S.E.2d 275 (1988) (hereinafter *Pieper I*).

Having failed to obtain relief in this State under URESA to enforce the Iowa Orders, plaintiff returned to Iowa to have the Orders of that State reduced to a money judgment. On 5 June 1989, an "Enrolled Order" was entered in the Iowa District Court adjudging defendant to be in arrears for support payments pursuant to the earlier Iowa Orders, in the sum of $17,085.00 plus interest of $5,990.12 which had accumulated thereon through the date of hearing, 26 May 1989. Interest on said judgment was to continue to accumulate at the rate of $4.68 per day.

Thereafter, in August of 1989, plaintiff filed a complaint in North Carolina seeking enforcement of the June 1989 Iowa Judgment. The subject action was tried without a jury and on 21 May 1991 judgment was entered in favor of plaintiff. The trial judge held that the Iowa Judgment was valid and entitled to full faith and credit in the State of North Carolina and further that the dismissal of the prior URESA action brought by plaintiff did not bar this claim by *res judicata*. The trial court found the total due by defendant pursuant to the Iowa Judgment, with accumulated interest through the date of judgment, to be $26,468.12. Additionally, the trial judge found that defendant, subsequent to the original Iowa Order dated August 1984, had given Mark a number of checks, totaling $5,650 to cover various college expenses. The court gave

PIEPER v. PIEPER

[108 N.C. App. 722 (1993)]

defendant a credit for this amount, deducting $5,650 from the total amount due. Judgment was entered in favor of plaintiff in the amount of $20,818.12 plus interest accumulating from the date of judgment at 8%. Defendant appealed from entry of judgment and, plaintiff appealed from the judgment as to the credits awarded to defendant.

I.

By defendant-appellant's first assignment of error, he contends that the Iowa Judgment is not entitled to full faith and credit because enforcement of such judgment is contrary to statutory law in North Carolina and thus violates public policy. We disagree.

Under the Full Faith and Credit Clause of Article IV, Sec. 1 of the United States Constitution, a judgment rendered by a court of one state is, in the courts of another state, binding and conclusive as to the merits adjudicated. *Fleming v. Fleming*, 49 N.C. App. 345, 350, 271 S.E.2d 584, 587 (1980). Therefore, we are with limited exceptions, bound to recognize and enforce a valid judgment rendered by a sister state. A foreign "judgment may be collaterally attacked only upon the following grounds: (1) lack of jurisdiction; (2) fraud in procurement; or (3) that it is against public policy." *McGinnis v. McGinnis*, 44 N.C. App. 381, 388, 261 S.E.2d 491, 496 (1980) (citing *Howland v. Stitzer*, 231 N.C. 528, 58 S.E.2d 104 (1950)).

[1] Defendant does not contend that the Iowa court, entering the June 1989 judgment, lacked jurisdiction nor that there was fraud in the procurement of the decree. His contention is that since our statutes do not recognize a duty of support beyond the age of eighteen, enforcement of the Iowa court's Order for his continued child support payments violates North Carolina law and is therefore contrary to the public policy of this state. *See* N.C. Gen. Stat. § 50-13.4(c) ("[p]ayments ordered for the support of a child shall terminate when the child reaches the age of 18 . . . ." with two exceptions inapplicable in this case).

"[T]he mere fact that the law of the forum differs from that of the other jurisdiction does not mean that the foreign statute is contrary to public policy of the forum." *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 857 (1988). To justify a court in refusing to enforce a right which accrued under foreign law, on the basis that it is contrary to the public policy of our laws,

PIEPER v. PIEPER

[108 N.C. App. 722 (1993)]

"it must appear that it is against good morals or natural justice, or that for some other reason the enforcement of it would be prejudicial to the general interest of our own citizens." *Ellison v. Hunsinger*, 237 N.C. 619, 627, 75 S.E.2d 884, 891 (1953).

This Court made it clear in *MGM Desert Inn v. Holtz*, 104 N.C. App. 717, 411 S.E.2d 399 (1991), that public policy is an extremely narrow exception to the granting of full faith and credit. In *MGM*, the plaintiff sought enforcement of a Nevada judgment predicated on a gambling debt. The defendant argued that the judgment was void and not enforceable as being contrary to the public policies and statutes of our state which prohibit gambling. Judge Parker, writing for this Court, explained the special nature of a foreign judgment:

> A cause of action on a judgment is different from that upon which the judgment was entered. In a suit upon a money judgment for a civil cause of action the validity of the claim upon which it was founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon a specialty.

*Id.* at 721, 411 S.E.2d at 401 (quoting *Milwaukee County v. White Co.*, 296 U.S. 268, 275-76, 80 L. Ed. 220, 227 (1935)). Because of the virtual finality of a foreign judgment and the mandates of the Full Faith and Credit Clause, "it is rare that we will disregard a sister state judgment on public policy grounds." *Id.* at 723, 411 S.E.2d at 402 (quoting *Mottu v. Davis*, 151 N.C. 237, 65 S.E. 969 (1909)). This Court concluded in *MGM*, that notwithstanding North Carolina's anti-gambling statutes, no public policy exception to the Full Faith and Credit Clause existed to prohibit enforcement of the Nevada judgment. *Id.*

In the subject case, we agree with the trial court's conclusion that, "[g]iving full faith and credit to Iowa law is not contrary to North Carolina public policy, in that, continued child support beyond the age of eighteen is not against good morals, natural justice or prejudicial to the interest of North Carolina citizens." Clearly, no injustice accrues to the people of North Carolina by enforcement of the Iowa Order. In fact, this Court has recognized that "a parent can by contract assume an obligation to his child greater than the law otherwise imposes and by contract bind himself to support his child after emancipation and past majority." *Carpenter*

*v. Carpenter*, 25 N.C. App. 235, 238, 212 S.E.2d 911, 913, *cert. denied*, 287 N.C. 465, 215 S.E.2d 623 (1975) (citations omitted). By recognizing these contracts as valid, we, in effect, held that such action is not against public policy. Moreover, we have held that,

> a decree for the future payment of alimony or child support is, as to installments past due and unpaid, within the protection of the full faith and credit clause of the Constitution unless by the law of the state in which the decree was rendered its enforcement is so completely within the discretion of the courts in that state that they may annul or modify the decree as to overdue and unsatisfied installments.

*Fleming*, 49 N.C. App. at 349-50, 271 S.E.2d at 587 (citations omitted).

We conclude that enforcement of the Iowa judgment for continued child support payments beyond the age of eighteen does not violate the public policy of North Carolina. We therefore hold that the trial court correctly found the Iowa judgment entitled to full faith and credit in this State.

## II.

[2] Defendant secondly contends that the trial court erred in entering judgment against him because plaintiff's claim is barred under the doctrine of *res judicata* by the Order entered 29 July 1987 dismissing plaintiff's claim in *Pieper I*. He argues that the trial court's dismissal of plaintiff's previous action for failure to state a claim upon which relief could be granted acted as an adjudication on the merits under Rule 41(b). *Dawson v. Allstate Ins. Co.*, 106 N.C. App. 691, 417 S.E.2d 841 (1992) (unless the court in its order for dismissal otherwise specifies, a dismissal for failure to state a claim operates as an adjudication on the merits). While defendant's statement of the law regarding a 12(b)(6) dismissal is correct, his application of that principle to the facts of this case is misplaced.

North Carolina General Statute Section 52A-4 states that the Uniform Reciprocal Enforcement of Support Act remedies "are in addition to and not in substitution for any other remedies." The legislative intent by enactment of URESA was thus to "provide authority to the courts of this State to apply the URESA so as to provide for the support of a minor child independent of and without regard for any other support judgments . . . ." *Stephens v. Hamrick*, 86 N.C. App. 556, 558, 358 S.E.2d 547, 548 (1987) (quoting *County of Stanislaus v. Ross*, 41 N.C. App. 518, 522, 255 S.E.2d

229, 231 (1979)). In *Stephens*, this Court held that a plaintiff did not abandon her rights to child support payments awarded under a South Carolina support order by accepting payments under a North Carolina URESA order. *Id.* Chapter 52A simply provides an additional means of "enforcing" support obligations. *Blake v. Blake*, 34 N.C. App. 160, 161, 237 S.E.2d 310, 311 (1977). Thus the Order dismissing plaintiff's prior action brought in North Carolina is conclusive only as to its finding that the plaintiff is not entitled to enforce the Iowa Orders pursuant to our URESA statute.

In the subject case, plaintiff's first action was dismissed because the Iowa Order was not enforceable pursuant to our URESA statute against defendant. Plaintiff thereafter returned to Iowa and filed an Application for Determination of Amount Due, under the previously issued Orders. According to the "Enrolled Order," defendant was properly served in that matter but failed to appear in person or by counsel at the hearing. Plaintiff presented evidence from which the court made findings of fact and concluded that defendant was indebted to plaintiff in the amount of $ 17,085 plus interest. Any defenses to this action, asserted by defendant should have been brought by him in Iowa at that time. Having reduced the amount of arrearage to valid judgment, absent any applicable exceptions, we are bound to apply the Full Faith and Credit Clause and provide full enforcement of the judgment in North Carolina. *Silvering v. Vito*, 107 N.C. App. 270, 275, 419 S.E.2d 360, 364 (1992). We note that our holding on this issue is consistent with the opinion of this Court in *Pieper I*. In affirming the dismissal, this Court stated:

Petitioner contends that child support payments are within the protection of the full faith and credit clause of the federal constitution unless the rendering state has the power to annul or modify the decree as to overdue and unsatisfied installments. We do not disagree. *While there is no question that petitioner remains free to seek enforcement of her foreign judgment via alternative, well-trodden legal routes, see, e.g., Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910); *Fleming v. Fleming*, 49 N.C. App. 345, 271 S.E.2d 584 (1980), plaintiff did not pursue such routes in this case.

*Pieper*, 90 N.C. App. at 407, 368 S.E.2d at 424 (emphasis added).

We find that following the dismissal of the URESA action by the trial judge in *Pieper I*, plaintiff could properly return to

Iowa and seek a final money judgment based on the previous Iowa order. Likewise, defendant was at liberty to present any defenses to the subsequent Iowa action, but he chose not to do so. Once obtaining the valid judgment, plaintiff was free to return to North Carolina to seek enforcement of that judgment pursuant to the Full Faith and Credit Clause of the United States Constitution. We therefore conclude that the trial court's dismissal of plaintiff's previous claim does not bar the present action under the doctrine of *res judicata.*

## III.

[3] Defendant next contends that he was entitled to a credit in an amount greater than that awarded by the trial court. By plaintiff's appeal she contends that the trial court erred in allowing the defendant any credits against the Iowa Order, arguing that the Order was entitled to full faith and credit and was *res judicata* as to the amount owed by defendant up to the date of judgment. We agree with plaintiff and thereby find defendant's argument to be without merit.

As stated previously, pursuant to the Full Faith and Credit Clause, "an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Silvering*, 107 N.C. App. at 274, 419 S.E.2d at 363 (quoting *Cannon v. Cannon*, 223 N.C. 664, 669, 28 S.E.2d 240, 243 (1943)). Defendant makes no argument that the Iowa Order was entered without jurisdiction, we therefore assume that the court had jurisdiction. *Thomas v. Frosty Morn Meats, Inc.*, 266 N.C. 523, 526, 146 S.E.2d 397, 400 (1966).

Rather, defendant asserts two contentions for allowing him credits: 1) that payment may be raised collaterally as a defense to an action based upon a foreign order or judgment; and 2) that since Iowa law would not allow a credit for direct payments made by defendant, but North Carolina recognizes this defense, he has the right to raise it as a defense which could not have been asserted in the original action. Defendant cites *Cresent Hat Company v. Chizick*, 223 N.C. 371, 26 S.E.2d 871 (1983) and *Roberts v. Pratt*, 158 N.C. 50, 73 S.E.2d 129 (1911) in support of his first contention. However, in those cases the defendants were permitted to "plead as a counter-claim payment made *since the rendition of judgment.*"

*Cresent Hat*, 223 N.C. at 374, 26 S.E.2d at 872 (emphasis added). Thus, those decisions are inapposite to the facts of this case in which defendant seeks credit for payments made prior to entry of the Iowa judgment on 5 June 1989.

The trial court in this case, awarded credits to defendant based on his second contention, that he could not raise this defense in Iowa and thus should not be denied the defense in this State. We hold however, that even under North Carolina law, defendant is not entitled to any credits. Under N.C.G.S. § 50-13.10(a), "if the supporting party is not disabled or incapacitated as provided by subsection (a)(2), a past due, vested child support payment is subject to divestment only as provided by law, and 'if but only if, a written motion is filed, and due notice is given to all parties . . . [b]efore the payment is due . . . .' " *Craig v. Craig*, 103 N.C. App. 615, 619, 406 S.E.2d 656, 658 (1991) (quoting N.C. Gen. Stat. § 50-13.10(a) (1987) ). Where defendant made no motion for modification, the trial court was without authority to "modify in any way for any reason" the past due child support payments and defendant is not entitled to credit for any sums given directly to Mark outside of the Iowa Order. N.C. Gen. Stat. § 50-13.10(a) (1987).

In a factually similar case, the plaintiff registered an Arizona judgment for arrearage in North Carolina. *Fleming*, 49 N.C. App. 345, 271 S.E.2d 584. At trial, the defendant in *Fleming* sought credit for payments made, subsequent to entry of the original order but prior to entry of the money judgment. This Court refused to permit such credits, holding that "a final judgment [is] entitled to full faith and credit, and is conclusive on the amount owed by defendant." *Id.* at 350, 271 S.E.2d at 587 (citation omitted). Therefore, "[i]t is improper to permit an alteration or re-examination of the judgment, or of the grounds on which it is based." *Id.; see also Glatz v. Glatz*, 98 N.C. App. 324, 390 S.E.2d 763, *cert. denied*, 327 N.C. 427, 395 S.E.2d 677 (1990) (fully enforceable judgment of another state was entitled to enforcement according to its terms in this state, therefore, to allow defendant a credit against the child support obligation violated the Full Faith and Credit Clause).

In this case, defendant sought, and was given, credits by the trial court for payments made prior to entry of the 5 June 1989 Iowa judgment. Whereas that judgment was not subject to modification, the trial court erred in failing to treat the Iowa judgment for $17,085 plus interest as *res judicata* on the issue of arrearage

due to plaintiff up to 25 May 1989. We therefore reverse the judgment as to the credits awarded defendant.

Defendant finally argues that he should have been ordered to make payments directly to the parties' son rather than to plaintiff. As discussed previously, we are bound under the dictates of full faith and credit to enforce the Iowa judgment as entered. Defendant should have raised this issue before the Iowa Courts.

For the foregoing reasons we affirm the trial court's entry of judgment against the defendant. As to the credits awarded defendant, we reverse and remand to the trial court for entry of judgment in accordance with this opinion.

Judges GREENE and WALKER concur.

Judge WALKER concurred in this opinion prior to 8 January 1993.