STATE OF NEW YORK/KAREN ANDREWS, Plaintiff v. GEORGE PAUGH, Defendant

No. COA98-1361

(Filed 2 November 1999)

### 1. Attorney General— standing—foreign child support order

The Attorney General had standing to file a brief on behalf of plaintiff-appellant mother in a URESA action. The issue here is enforcement of orders rendered in an action to register a foreign child support order and there is ample statutory authority obligating the Attorney General to represent the child support obligees on appeal. N.C.G.S. § 52A-10.1.

### 2. Child Support, Custody, and Visitation— URESA—jurisdiction—paternity tests

Although the appellate ruling was based on other grounds, the district court erroneously dismissed a mother's URESA action on the basis of her refusal to obey an invalid order to undergo paternity testing. The North Carolina version of URESA grants an obligor-father the right to a determination of paternity, but a prior adjudication of paternity by a foreign court of competent jurisdiction must be accorded full faith and credit. The father here does not allege that the New York court's adjudication of paternity was error and did not timely challenge or appeal the New York support orders.

### 3. Child Support, Custody, and Jurisdiction— URESA—jurisdiction—cease and desist order

An order to cease and desist attempts to enforce a New York child support order and a contempt order for violating the cease and desist order, both of which arose from disputed paternity, were void for lack of subject matter jurisdiction where the trial court had also dismissed the URESA action. Full faith and credit must be accorded the New York order unless its enforcement is within the discretion of the New York courts, but the New York courts do not have discretion to annul or modify prior pa-

ternity orders. Moreover, the father argued none of the exceptions from *Pieper v. Pieper*, 108 N.C. App. 722. The case ended and jurisdiction terminated when the trial court dismissed the URESA action.

Judge WALKER concurring.

Appeal by plaintiff from order entered 29 July 1998 by Judge Kevin M. Bridges in Union County District Court. Heard in the Court of Appeals 23 August 1999.

This is an appeal of a contempt order and judgment against plaintiff mother in a URESA action to register New York court orders for child support against defendant father, a North Carolina resident. See N.C. Gen. Stat. § 52A-1, et seq. (repealed effective 1 January 1996). Plaintiff-appellant Andrews, the mother, and defendant-appellee Paugh, the father, were divorced in New York on 29 November 1977. Without objection, the New York courts found their seven children to be children of the marriage, granted custody to the mother, and ordered the father to pay weekly child support until the children reached eighteen. The father did not contest paternity in two enforcement actions brought by the mother in New York in 1978 and 1984.

Prior to 1987, the father moved to North Carolina. On 15 June 1987, the mother, through a New York IV-D agency, filed a URESA request to register the New York support order in Union County and collect over $5000.00 in back support payments. The order was registered by operation of law pursuant to N.C. Gen. Stat. § 52A-29. The father challenged confirmation of the order pursuant to N.C. Gen. Stat. § 52A-30 at an 18 September 1987 hearing. At the hearing, he orally moved for blood testing of the mother and the four remaining minor children in order to ascertain paternity.

The district court allowed the motion for blood testing and entered an order to compel testing on 21 December 1987. The mother and her children failed to appear for testing at a New York site on two separate occasions. On 25 March 1988, the father filed a motion in Union County asking the district court to either dismiss the URESA action or again order blood testing. After the mother failed to appear at a hearing on the motion, the court ordered on 16 December 1988 that the entire URESA action be dismissed with prejudice and that the mother cease and desist from all further support collections. The mother did not appeal the order.

Counsel for the New York IV-D agency stated in a 13 March 1989 letter to Union County court officials that the mother felt the testing was "frivolous" and embarrassing for her children. Counsel also protested the dismissal of the case, arguing that: (1) dismissal was improper because the mother was neither present nor represented by counsel at the hearing (the father contends that the mother was represented by an assistant district attorney present at the hearing); (2) Union County court lacked jurisdiction because the URESA action had not been registered; and (3) the attempted withdrawal of the URESA action had been improperly ignored. Through New York child support enforcement authorities and the Social Security Administration, the mother continued to collect child support.

On 18 May 1998, ten years after the Union County cease and desist order, the father filed a Motion in the Cause and for Contempt in Union County District Court. The motion requested that the court order the mother to appear and show cause why she should not be held in contempt, to notify proper authorities to cease and desist from collections activities, to repay intercepted disability funds to the father, and to pay punitive damages and attorney's fees. Following a hearing on the motion, the court made the following relevant findings: (1) the mother's attempted withdrawal of the URESA action was improper; (2) the father timely challenged the URESA order; (3) the order was registered, but never confirmed, giving the court jurisdiction under URESA; (4) the father had the right under URESA to request blood testing; (5) the mother failed to submit to a valid court order compelling testing; (6) under URESA, by acting in a timely fashion the father could directly challenge the New York order in North Carolina; (7) the mother's URESA action was properly dismissed; (8) the mother, with the assistance of the State of New York and the Social Security Administration, "converted" the father's funds in violation of the 1988 cease and desist order and (9) the mother was in contempt of the order to submit to testing and to cease and desist from support collections. On 29 July 1998, the court ordered the mother to serve one-hundred and eighty days in jail for civil contempt, to repay over $10,000 in "converted" disability payments and tax refunds, to pay over $5,000 of the father's attorney's fees and costs, and to request the State of New York and the Social Security Administration to cease and desist from future collections. The mother appeals.

*Attorney General Michael F. Easley, by Assistant Attorneys General Gerald K. Robbins and Kathleen U. Baldwin, for plaintiff-appellant.*

*W. David McSheehan and Franklin S. Hancock for defendant-appellee.*

EAGLES, Chief Judge.

**[1]** We first decide whether the Attorney General of North Carolina had standing to file a brief on behalf of the plaintiff-appellant mother. The father argues that this case is a "private matter" of conversion of property by the mother, and therefore was not within the statutory authority allowing the Attorney General to represent the mother. We disagree. The issue here is enforcement of orders rendered in an action to register a foreign child support order. There is ample statutory authority *obligating* the Attorney General to represent the child support obligees on appeal. See N.C. Gen. Stat. §§ 52A-10.1 (URESA), 52C-3-308 (UIFSA) and 114-2. Accordingly, we hold that representation of the mother by the Attorney General is proper.

**[2]** The central issue here is whether the district court had jurisdiction to order the mother to cease and desist from support collections on 16 December 1988 and then to hold the mother in contempt of the cease and desist order on 29 July 1998. After careful consideration of the briefs and record, we hold that upon dismissal of the URESA action in 1988, the subsequent orders were void for lack of subject matter jurisdiction.

The father, Defendant Paugh, argues that jurisdiction is proper because (1) by filing the URESA petition, the mother submitted the entire issue of child support, including paternity, to the court, (2) the mother refused to submit to court-ordered paternity testing, and then (3) the mother continued collection efforts (termed "conversion" by the father) in New York despite a North Carolina cease and desist order. The father argues that "[i]t would not be good policy for this state, in the name of 'full faith and credit,' to allow and encourage another person or state to flaunt [sic] the laws of this state under the guise of uniformity" by asserting lack of jurisdiction as a defense.

Moreover, the father contends that "there is no presumption . . . that the [New York] child support order . . . is valid and enforceable without further inquiry under the law of the responding state." He maintains that the 1988 cease and desist order is a valid basis for

"other relief" granted by the court, exercising expansive "jurisdiction over all aspects of the . . . child support case," including recovery of "converted" funds under the 1998 contempt citation. *Pinner v. Pinner*, 33 N.C. App. 204, 206 S.E.2d 633, 635 (1977) (URESA initially provides for "registration, and if required, a hearing on whether to vacate the registration or grant the 'obligor' *other* relief").

We disagree.

A support obligee may register a foreign support order pursuant to URESA "if the duty of support is based on a foreign support order." N.C. Gen. Stat. § 52A-25; *see Williams v. Williams*, 97 N.C. App. 118, 121-22, 387 S.E.2d 217, 219 (1990). A North Carolina court hearing an obligee's challenge to confirmation of a foreign support order under N.C. Gen. Stat. § 52A-30 may dismiss the obligee's action to register the order (or refuse to confirm the registration) for lack of jurisdiction where it finds the obligor owes no duty of support to the obligee. N.C. Gen. Stat. §§ 52A-12-14. *See Pifer v. Pifer*, 31 N.C. App. 486, 489, 229 S.E.2d 700, 702-03 (1976) ("if the court of the responding state finds a duty of support, it may order the defendant to furnish support"); 2 Lee, North Carolina Family Law, § 169 at 342, 343. Pursuant to N.C. Gen. Stat. § 52A-8, our courts have held that the duty of support question is to be resolved under the "law of the state where the obligor was present during the legally material times provided for in the statute." *Williams* at 122, 387 S.E.2d at 219 (citing *Pieper v. Pieper*, 323 N.C. 617, 374 S.E.2d 275 (1988)). *Accord Reynolds v. Motley*, 96 N.C. App 299, 385 S.E.2d 548 (1989). North Carolina law applies here, since plaintiff-appellant does not present evidence to rebut the statutory presumption that the obligor was present in North Carolina during "the period or any part of the period for which support is sought." N.C. Gen. Stat. § 52A-8; *Williams* at 121, 387 S.E.2d at 219.

The North Carolina version of URESA grants obligor fathers the right to a determination of paternity, a condition precedent to a duty of support. N.C. Gen. Stat. § 52A-8.2; *Reynolds* at 304-05, 385 S.E.2d at 551. A prior adjudication of paternity by a foreign court of competent jurisdiction must be accorded full faith and credit in North Carolina. *See* N.C. Gen. Stat. § 110-132.1. Thus, once a foreign court of competent jurisdiction issues an order of support adjudicating the issue of paternity, principles of full faith and credit mandate that the issue not be relitigated under URESA in North Carolina. *Brondum v. Cox*, 292 N.C. 192, 199, 232 S.E.2d 687, 691 (1977). The father here

does not allege that the New York court's adjudication of paternity was error, nor did the father timely challenge or appeal the New York support orders in 1978 or 1984. Thus, the Union County District Court failed to accord full faith and credit to the valid New York determination of paternity and had no authority to invite relitigation of the paternity issue by ordering blood testing. The district court erroneously dismissed the mother's case in 1988 on the basis of her refusal to obey the invalid order to undergo testing. But because the mother failed to timely appeal the dismissal of her URESA action, we do not base our decision on that portion of the district court's ruling.

[3] The dispositive issue is whether the district court had jurisdiction to issue the 1998 contempt order based on the mother's disobedience of the cease and desist portion of the 1988 order. With very few exceptions, URESA does not confer jurisdiction on North Carolina courts to prevent a mother, a New York resident, from asserting her right to collect child support under a valid, unappealed-from New York court order for child support. This Court held in *Fleming v. Fleming*, 49 N.C. App. 345, 349-50, 271 S.E.2d 584, 587 (1980) that:

> The full faith and credit clause . . . requires that the judgment of the court of one state must be given the same effect in a sister state that it has in the state where it was rendered. A decree for the future payment of alimony or child support is, as to installments past due and unpaid, within the protection of . . . the Constitution. [Citations omitted.]

Here, the mother seeks to register a New York court order for child support to collect back child support owed on the New York court order from a North Carolina resident. Despite an unappealed-from prior adjudication of paternity in New York, the putative father seeks to avoid his parental duty of support by asserting in North Carolina that the children are not his offspring.

Under *Fleming*, we must accord full faith and credit to the New York order "*unless* by the law of the state in which the decree was rendered[,] its enforcement is so completely within the discretion of the courts in that state that they may annul or modify the decree as to overdue and unsatisfied installments." *Id.* (emphasis added). Thus, we first examine the discretion accorded to New York courts issuing orders for child support under New York law. We find that while New York courts may modify or cancel child support arrearages, New York

Domestic Relations Law § 244 (McKinney 1999), they may not allow a father to collaterally attack support orders on the issue of paternity where paternity was judicially determined as part of prior divorce and support proceedings. *Jeanne M. v. Richard G.* 465 N.Y.S.2d 60 (1983), *Matter of Montelone v. Antia,* 400 N.Y.S.2d 129 (1977), *Matter of Sandra I. v. Harold I.,* 388 N.Y.S.2d 376 (1976). Because New York courts have no apparent discretion to annul or modify the prior New York paternity orders, the child support order here is fully protected by the full faith and credit clause pursuant to *Fleming.*

In addition, this Court has held that valid foreign support decrees are immune to collateral attack in North Carolina unless (1) the foreign court lacked jurisdiction over the obligor at the relevant time, (2) there was fraud in the procurement of the decree in the foreign court, or (3) the foreign decree is against the public policy of North Carolina. *Pieper v. Pieper,* 108 N.C. App. 722, 725, 425 S.E.2d 435, 436 (1993) (citing *McGinnis v. McGinnis,* 44 N.C. App. 381, 388, 261 S.E.2d 491, 496 (1980)). Since the father here argues none of these exceptions, we conclude that constitutional considerations make it "improper to permit an alteration or re-examination of the judgment, or of the grounds on which it is based." *Fleming* at 345, 271 S.E.2d at 587 (citing *Sears v. Sears,* 253 N.C. 415, 417, 117 S.E.2d 7, 9 (1960)). The full faith and credit clause therefore limits the scope of the district court's jurisdiction to approving or dismissing the registration action in light of relevant North Carolina law. We hold that the district court had no jurisdiction to prevent a nonresident support obligee (the mother) from asserting her rights under a valid foreign court order.

Absent the expansive jurisdiction argued by defendant-appellee father, once the district court dismissed the URESA action with prejudice in 1988, the case ended and jurisdiction terminated. N.C. R. Civ. P. 41(b); *Barnes v. McGee,* 21 N.C. App. 287, 204 S.E.2d 203 (1974). Therefore, the subsequent cease and desist portion of the 1988 order and 1998 contempt order were void for lack of subject matter jurisdiction. *Harding v. Harding,* 46 N.C. App. 62, 64, 264 S.E.2d 131, 132 (1980) ("defendant cannot be held in contempt for his failure to comply with void portions" of an order).

We hold that the defendant-appellee father may not avoid his support obligations in New York by pleading a paternity defense to confirmation of the mother's URESA filing in North Carolina. Because we hold that the 1988 and 1998 orders are void for lack of subject matter jurisdiction due to constitutional and procedural limitations

on the district court which issued them, we need not discuss defendant-appellee father's remaining arguments as to the validity of the orders.

Reversed.

Judge WALKER concurs with a separate opinion.

Judge McGEE concurs.

Judge WALKER concurring.

I concur in this opinion; however, I write separately to express concern over the actions taken by the district court in this case.

The record shows that at the time the defendant made the motion to compel blood testing on 18 September 1987, an attorney for the State was listed who apparently represented the plaintiff's interest. Defendant was represented throughout by a court-appointed attorney. When the order to compel blood testing was entered on 21 December 1987, there is no evidence that plaintiff was represented by counsel. At that time, the youngest of the children ordered to submit to blood group testing was eleven years old.

Thereafter, there were five separate hearings resulting in orders entered by the district court, but there is no evidence that plaintiff was represented by counsel. Before proceeding with matters such as those involved in this case, the trial court should have inquired and insisted that plaintiff's interest in this Uniform Reciprocal Enforcement Action be represented by counsel. Ordinarily, the District Attorney's Office would represent a plaintiff's interest in these actions.

If the plaintiff's interest had been represented at the hearings, it is apparent that the district court would have had a different perspective on the issues before the court. The State of New York, as it expressed in correspondence contained in the record, had every reason to be disturbed by the actions taken by the district court.