CITY OF OAKLAND, APPELLANT, *v.*
DESERT OUTDOOR ADVERTISING, INC., RESPONDENT.

No. 53973

August 4, 2011                    267 P.3d 48

*Porter Simon, PC,* and *Brian C. Hanley* and *Peter H. Cuttitta,*
Reno, for Appellant.

*Robison Belaustegui Sharp & Low* and *Frank C. Gilmore,* Reno,
for Respondent.

Before the Court EN BANC.

## OPINION

By the Court, CHERRY, J.:

This appeal involves an attempt by appellant City of Oakland to enforce, in Nevada, a California civil judgment against respondent Desert Outdoor Advertising, Inc. We consider whether the California judgment is entitled to full faith and credit in Nevada. Recognizing that *Huntington v. Attrill*, 146 U.S. 657 (1892), provides an exemption to the Full Faith and Credit Clause of the United States Constitution, such that other states' penal judgments are unenforceable in the state of Nevada, we conclude that the California judgment in this case was penal in nature and, as such, is not enforceable in Nevada. Accordingly, we affirm the district court's decision in this matter.

### FACTUAL AND PROCEDURAL HISTORY

In 2003, Desert Outdoor erected an outdoor billboard for advertising purposes within Oakland, California, city limits. Upon learning of the advertisement, Oakland sent a notice to abate to Desert Outdoor, advising it that the billboard was in violation of Oakland's municipal code. Specifically, the sign in question contained advertisements for businesses that were not located on the property on which the sign was erected, in violation of Oakland Municipal Code section 14.04.270.[1] After two months had passed and Desert Outdoor had taken no action, Oakland sent Desert Outdoor another notice to abate, advising Desert Outdoor that it was in violation of Oakland Municipal Code sections 14.04.270,

---

[1]Oakland Municipal Code section 14.04.270 provides, among other things, that any billboard on a property that is adjacent to a freeway must relate to a business that is located on that property.

17.10.850,[2] and 17.70.050(B).[3] The second notice to abate also instructed Desert Outdoor to remove the billboard and its supporting pole within the next month.

After Desert Outdoor failed to remove the sign, Oakland filed suit against it in California for, among other things, unlawful business practices, with the consent of the Alameda County District Attorney. *See* Cal. Bus. & Prof. Code § 5466(b) (providing for civil actions brought by government entities). The California district court ultimately found that Desert Outdoor engaged in unlawful business practices through its violation of the aforementioned Oakland Municipal Code sections. Thus, the California district court imposed civil statutory penalties upon Desert Outdoor. On November 2, 2007, the California district court entered a civil judgment in favor of Oakland pursuant to California Business and Professions Code Section 5485.[4] The judgment was for

---

[2]Oakland Municipal Code section 17.10.850 defines advertising signs, in relevant part, as ''[a] sign directing attention to, or otherwise pertaining to, a commodity, service, business, or profession which is not sold, produced, conducted, or offered by any activity on the same lot.''

[3]Oakland Municipal Code section 17.70.050(B) provides that special, development, realty, civic, and business signs are to be permitted.

[4]California Business and Professions Code section 5485 provides, in relevant part, that

> (b) If a display is placed or maintained without a valid, unrevoked, and unexpired permit, the following penalties shall be assessed:
>
> (1) If the advertising display is placed or maintained in a location that conforms to the provisions of this chapter, a penalty of one hundred dollars ($100) shall be assessed.
>
> (2) If the advertising display is placed or maintained in a location that does not conform to the provisions of this chapter or local ordinances, and is not removed within thirty days of written notice from the department or the city or the county with land use jurisdiction over the property upon which the advertising display is located, a penalty of ten thousand dollars ($10,000) plus one hundred dollars ($100) for each day the advertising display is placed or maintained after the department sends written notice shall be assessed.
>
> (c) In addition to the penalties set forth in subdivision (b), the gross revenues from the unauthorized advertising display that are received by, or owed to, the applicant and a person working in concert with the applicant shall be disgorged.
>
> (d) The department or a city or a county within the location upon which the advertising is located may enforce the provisions of this section.
>
> (e) Notwithstanding any other provision of law, if an action results in the successful enforcement of this section, the department may request the court to award the department its enforcement costs, including, but not limited to, its reasonable attorneys' fees for pursuing the action.
>
> (f) It is the intent of the Legislature in enacting this section to strengthen the ability of local governments to *enforce* zoning ordinances governing advertising displays.

(Emphasis added.)

(1) $124,000 in statutory civil penalties, which were calculated by adding the statutory penalty of $10,000, plus $75 per day for 1,520 days of violation; (2) $263,000 in disgorged profits; and (3) costs and attorney fees in the amount of $92,353.75. Desert Outdoor appealed the judgment, and the California Court of Appeal affirmed.

On February 28, 2008, Oakland filed its California judgment in Nevada's Second Judicial District Court, seeking enforcement of the judgment under the Uniform Enforcement of Foreign Judgments Act (UEFJA). NRS 17.330-.400. Thereafter, Oakland attached Desert Outdoor's bank accounts and income from Desert Outdoor's Nevada properties. Approximately 13 months after the judgment was filed in Nevada, Desert Outdoor filed a motion to set aside the foreign judgment and quash execution of the judgment. The district court granted Desert Outdoor's motion, concluding that because California's judgment was penal, it was not entitled to full faith and credit. This appeal followed.

## DISCUSSION

On appeal, Oakland argues that the district court: (1) improperly relied on the United States Supreme Court's decision in *Huntington v. Attrill*, 146 U.S. 657 (1892), to conclude that the penal judgment of a sister state need not be given full faith and credit by Nevada courts; and (2) erred in concluding that the California civil monetary judgment was penal in nature. We disagree with Oakland's contentions, and we affirm the district court's decision.

### The California judgment falls within the penal exception to the Full Faith and Credit Clause set forth in Huntington v. Attrill

On appeal, Oakland argues that the district court erred when it relied upon *Huntington v. Attrill*, 146 U.S. 657 (1892), to set aside the California judgment. Oakland contends that *Huntington* is a "relic" of "questionable authority," and that its enforcement is contrary to the purpose of the UEFJA, codified in Nevada at NRS 17.330 through 17.400, which is to "provide a speedy and economical method to enforce foreign judgments and to make uniform the laws of the states that enact it." As a result, Oakland argues, citing *Rosenstein v. Steele*, 103 Nev. 571, 573, 747 P.2d 230, 232 (1987), that the district court erred in setting aside the judgment because the only defenses available to Desert Outdoor under the UEFJA are those that a "judgment debtor may constitutionally raise under the Full Faith and Credit Clause and which are directed to the validity of the foreign judgment." For the reasons set forth below, we reject Oakland's contentions and conclude that the penal

exception set forth in *Huntington* warrants against enforcement of the California judgment in Nevada.

### *The Full Faith and Credit Clause and the UEFJA*

Under the Full Faith and Credit Clause of the United States Constitution, a final judgment entered in a sister state must be respected by the courts of this state. *See* U.S. Const. art. IV, § 1; *Rosenstein*, 103 Nev. at 573, 747 P.2d at 231; *Donlan v. State*, 127 Nev. 143, 145 & n.1, 249 P.3d 1231, 1233 & n.1 (2011). "For the States of the Union, the constitutional limitation imposed by the full faith and credit clause abolished, in large measure, the general principle of international law by which local policy is permitted to dominate rules of comity." *Broderick v. Rosner*, 294 U.S. 629, 643 (1935).

To further the principle of comity, Nevada adopted the UEFJA in NRS 17.330 through 17.400. Under this act, a properly filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a Nevada district court judgment, and may be enforced or satisfied in like manner. NRS 17.350. Nevada's UEFJA applies to all foreign judgments filed in Nevada district court for the purpose of enforcing the judgment in Nevada. NRS 17.340; NRS 17.350. The act defines a foreign judgment "as any judgment of a court of the United States or of any other court *which is entitled to full faith and credit in this state.*" NRS 17.340 (emphasis added).

However, not all judgments are entitled to full faith and credit in Nevada. Notably, "defenses such as lack of personal or subject-matter jurisdiction of the rendering court, fraud in the procurement of the judgment, lack of due process, satisfaction, or other grounds that make the judgment invalid or unenforceable may be raised by a party seeking to reopen or vacate a foreign judgment." 30 Am. Jur. 2d *Executions and Enforcement of Judgments* § 787 (2005); *see also Rosenstein*, 103 Nev. at 573, 747 P.2d at 232; *Marworth, Inc. v. McGuire*, 810 P.2d 653, 656 (Colo. 1991); *Wooster v. Wooster*, 399 N.W.2d 330, 333 (S.D. 1987) (quoting *Baldwin v. Heinold Commodities Inc.*, 363 N.W.2d 191, 194 (S.D. 1985)). In addition, the United States Supreme Court has determined that the Full Faith and Credit Clause does not apply to penal judgments. *Huntington v. Attrill*, 146 U.S. 657, 666, 672-73 (1892); *Nelson v. George*, 399 U.S. 224, 229 (1970) (reiterating that "the full faith and credit clause does not require that sister states enforce a for-

eign penal judgment''). This exception for penal judgments, most notably analyzed in *Huntington*, is the law at issue here.

### Huntington v. Attrill

In *Huntington*, Huntington obtained a judgment against Attrill in New York based on a statutory provision imposing joint and several liability on the officers of a corporation for the debts of the corporation itself if the officer made any materially false representation in a certificate, report, or public notice. *Id.* at 660-62. Huntington then brought a bill in Maryland state court seeking to have the New York judgment enforced in Maryland. *Id.* at 660-61. Attrill demurred to the bill on the grounds that Huntington's claim ''was for recovery of a penalty against Attrill arising under a statute of the state of New York, and because it did not state a case which entitled the plaintiff to any relief in a court of equity in the State of Maryland.'' *Id.* at 663. The circuit court of Baltimore overruled the demurrer, and the Maryland Court of Appeals reversed the decision of the circuit court and dismissed the bill on the grounds that ''liability imposed by section 21 of the statute of New York . . . was intended as a punishment for doing any of the forbidden acts, and was, therefore, . . . a penalty which could not be enforced in the state of Maryland.'' *Id.*

Huntington then sought a writ of error in the United States Supreme Court, arguing that the Maryland court unconstitutionally denied full faith and credit to the New York judgment. *Id.* at 665. After determining that the question of whether full faith and credit was denied to the New York judgment in Maryland was a federal question, the *Huntington* Court stated that ''in order to determine this question, it will be necessary, in the first place, to consider the true scope and meaning of the fundamental maxim of international law stated by Chief Justice Marshall in the fewest possible words: 'The courts of no country execute the penal laws of another.' '' *Id.* at 666 (citing *The Antelope*, 23 U.S. 66, 123 (1825)). The *Huntington* court then determined that

> [t]he question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act.

*Id.* at 673-74.

In analyzing whether the penal exception applies in this case, we must first resolve whether the penal analysis and exception

in *Huntington* is dictum. Dictum is not controlling. *Argentena Consol. Mining Co. v. Jolley Urga*, 125 Nev. 527, 536, 216 P.3d 779, 785 (2009); *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 282, 21 P.3d 16, 22 (2001). "A statement in a case is dictum when it is 'unnecessary to a determination of the questions involved.'" *Argentena Consol.*, 125 Nev. at 536, 216 P.3d at 785 (quoting *St. James Village, Inc. v. Cunningham*, 125 Nev. 211, 216, 210 P.3d 190, 193 (2009)).

We conclude that the statement in *Huntington* regarding the penal exception does not constitute dictum because it was necessary to determine the questions involved. While it has been indicated that this analysis is dictum, we disagree. *See* Note, *Enforcement by One State of Penal Statutes of Another*, 26 Harv. L. Rev. 172 n.1 (1912) (stating that the penal exception discussion in *Huntington* was "*dictum*, since the case only decided that a judgment on such a statute must be given full faith and credit under the constitution"); *Kersting v. Hardgrove*, 48 A.2d 309, 310 (N.J. Cir. Ct. 1946) (stating that "courts of one sovereignty will not enforce the penal laws of a foreign sovereignty" is "oft repeated dictum" that goes back to *Huntington* and "the maxim of international law that '[t]he courts of no country execute the penal laws of another'" (quoting *The Antelope*, 23 U.S. 66, 123 (1825))).

As stated by the United States District Court in the Eastern District of Virginia, "the only issue before the Court in *Huntington* was the meaning of the terms 'penal' and 'penalty' in the context of the international law doctrine that penal laws of one jurisdiction will not be enforced in a foreign jurisdiction." *Fisher v. Virginia Electric and Power Co.*, 243 F. Supp. 2d 538, 543 (E.D. Va. 2003).[5] The *Huntington* Court clearly stated that "[i]n order to determine this question [of whether full faith and credit was denied], it will be necessary, in the first place, to consider the true scope and meaning of the fundamental maxim of international law . . . : 'The courts of no country execute the penal laws of another.'" *Huntington*, 146 U.S. at 666 (quoting *The Antelope*, 23 U.S. at 123). The *Huntington* Court later concluded its decision on the fact that the "statute under which that judgment was recovered was not, for the reasons already stated at length, a penal law in the international sense." *Id.* at 686.

After *Huntington* was decided, the United States Supreme Court impliedly questioned the penal exception in *Milwaukee County v. White Co.*, 296 U.S. 268, 279 (1935), when it "intimate[d] no

---

[5]The dissent misconstrues the court's statements in *Fisher* in an attempt to bolster its position. When *Fisher* discusses "the *Huntington* fallacy," it is not disparaging the penal exception, as the dissent suggests, but is referring to *Huntington*'s discussion of the local action doctrine, a real property trespass doctrine that is inapplicable in this case. *Fisher*, 243 F. Supp. 2d at 543-44.

opinion whether a suit upon a judgment for an obligation created by a penal law, in the international sense, . . . is within the jurisdiction of the federal district courts'' (citation omitted). However, the Court then reiterated that ''the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment'' for a second time in *Nelson v. George*, 399 U.S. 224, 229 (1970) (citing *Huntington*, 146 U.S. 657). The Court noted that ''until the obligation to extradite matures, the Full Faith and Credit Clause does not require California to enforce the North Carolina penal judgment in any way.'' *Id.* at 229 n.6; *see also Philadelphia v. Austin*, 429 A.2d 568, 572 (N.J. 1981) (stating that ''the United States Supreme Court has continued to recognize the vitality of the penal exception'' (citing *Nelson*, 399 U.S. at 229)).[6] Furthermore, numerous courts have recognized the viability of *Huntington*'s penal exception. *See, e.g.*, *Schaefer v. H. B. Green Transportation Line*, 232 F.2d 415, 418 (7th Cir. 1956) (''It is generally recognized that penalties fixed by state laws are not [enforceable] in federal courts or even in other State courts.''); *People v. Laino*, 87 P.3d 27, 34 (Cal. 2004) (recognizing *Huntington*'s penal exception and determining that ''[i]f California need not give full faith and credit to penal judgments of another state, then it is free to determine under its own laws whether defendant's Arizona plea constitutes a conviction for purposes of the three strikes law''); *Wellman v. Mead*, 107 A. 396, 398-400 (Vt. 1919) (recognizing that *Huntington*'s penal exception applies to criminal laws and to penalties arising from municipal laws and concluding that the law at issue was not penal). Accordingly, we conclude that the *Huntington* penal analysis is not dictum.

Oakland further asserts that *Huntington* was effectively superseded by the passage of time and UEFJA, as recognized by *Rosenstein*, 103 Nev. at 573, 747 P.2d at 232. Oakland contends that according to *Rosenstein*, the only defenses to the UEFJA are not applicable here because the defenses are limited to those ''that a

---

[6]The dissent points out that in *Austin*, the court enforced a sister state judgment but fails to explain that the holding in *Austin* was limited to a penalty for failure to pay taxes that the court recognized was not intended to punish but was ''a civil remedy to the City in its role as tax collector.'' 429 A.2d at 571. In concluding that the Full Faith and Credit Clause requires enforcement of a sister state tax judgment, the court determined that

> it is not necessary to reject outright the penal exception to the Full Faith and Credit Clause. Indeed, that conclusion would be inappropriate since the United States Supreme Court has continued to recognize the vitality of the penal exception. *Nelson v. George*, 399 U.S. 224, 229 (1970). In this decision, we distinguish between a purely penal law and a tax law with penal provisions.

*Id.* at 572. The court then left ''the question of enforcement of an extrastate civil judgment containing penalties for violation of laws other than tax laws, such as parking ordinances,'' unresolved. *Id.*

judgment debtor can constitutionally raise under the full faith and credit clause and which are directed to the validity of the foreign judgment." *Id.*

We reject Oakland's argument because we conclude that *Huntington*'s penal exception is an exception to the Full Faith and Credit Clause as it removes the judgment from the scope of the clause altogether. Because the California judgment is not one entitled to full faith and credit, it does not fall under Nevada's UEFJA. *See* NRS 17.340 (stating, in relevant part, that "unless the context otherwise requires, 'foreign judgment' means any judgment of a court of the United States or of any other court which is *entitled to full faith and credit* in this state" (emphasis added)); *see also Farmers & Merchants Trust Company v. Madeira*, 68 Cal. Rptr. 184, 188 (Ct. App. 1968) ("If the judgment is a penal judgment it is not enforceable in this state under either the full faith and credit clause of the United States Constitution or as a matter of comity."); *S.H. v. Adm'r of Golden Valley Health Ctr.*, 386 N.W.2d 805, 807 (Minn. Ct. App. 1986) (while not deciding the merits of the case, recognizing that "[t]he full faith and credit clause . . . does not require a state to enforce the penal judgment of another state"); *MGM Desert Inn, Inc. v. Holz*, 411 S.E.2d 399, 402 (N.C. Ct. App. 1991) (" 'One exception to the full faith and credit rule is a penal judgment; a state need not enforce the penal judgment of another state.' " (quoting *FMS Management Systems v. Thomas*, 309 S.E.2d 697, 699-700 (N.C. Ct. App. 1983))); *Russo v. Dear*, 105 S.W.3d 43, 46 (Tex. App. 2003) (recognizing that penal judgments are not entitled to full faith and credit as they are among the recognized exceptions to the full faith and credit requirements). Thus, not all judgments are entitled to full faith and credit under Nevada's UEFJA, as recognized by *Rosenstein*, and these exceptions include the applicable penal exception in this case.[7]

Based on the foregoing discussion, we conclude that the *Huntington* penal exception to the Full Faith and Credit Clause is valid and binding law. Because we conclude that penal laws are exempted from the requirements of full faith and credit in Nevada, we next turn to the determination of whether the California judgment in this case was penal in nature.[8]

---

[7]While we have not discussed *Huntington* in the past, we disagree with Oakland that this somehow renders the *Huntington* doctrine not viable in Nevada. *Huntington*'s penal exception has been repeatedly cited to over the years, has never been overruled by the United States Supreme Court, and has been enforced in other cases. *See, e.g., Russo*, 105 S.W.3d at 46; *Holz*, 411 S.E.2d at 402; *S.H.*, 386 N.W.2d at 807.

[8]The dissent begins its argument that the California judgment should be enforced in Nevada by pointing out that gambling debts are entitled to enforcement in sister states that prohibit gambling and prohibit the enforcement of

*The California civil monetary judgment*

Oakland contends that the civil judgment is remedial and not penal because it resulted from Oakland's enforcement of its individual rights under California's unfair competition laws and was brought to halt a private harm against Oakland. We disagree and conclude that pursuant to the language used in California Business and Professions Code section 5485, the assessed statutory civil penalties were penal in nature.

Under the *Huntington* test,

> [t]he question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act.

146 U.S. at 673-74. "The test is not by what name the statute is called by the legislature . . . , but whether it appears . . . to be in its essential character and effect, a punishment of an offence against the public, or a grant of a civil right to a private person." *Id.* at 683.

Thus, here, the central question is whether the statute provided civil penalties as a means to punish a violator for an offense against the public or whether the statute created a private right of action to compensate a private person or entity.

We conclude that Oakland was not a private entity enforcing a civil right. Instead, pursuant to California Business and Professions Code section 17206, Oakland filed suit, with the permission of the Alameda County District Attorney, seeking penalties for Desert Outdoor's violations of Oakland zoning ordinances. Under these circumstances, it does not appear that private parties could have sued Desert Outdoor pursuant to California Business and Professions Code section 5466. However, each principal, agent, or employee of Desert Outdoor is also guilty of a misdemeanor for violating the billboard code sections. Cal. Bus. & Prof. Code § 5464. Moreover, California Business and Professions Code section 5485(f) makes plain that the legislature's intent in mandating such

---

gambling debts. However, the dissent fails to consider that it is illegal to cause a casino marker to be issued when the individual has insufficient funds to pay back the marker. *See* NRS 205.0832; NRS 205.130. It is not illegal to erect and maintain billboards in violation of zoning codes. Accordingly, these two situations are not analogous.

penalties was "to strengthen the ability of local governments to enforce zoning ordinances governing advertising displays." As such, it is clear that the statutes' remedies do not address private harms but rather address only public wrongs—in this case, the abatement of a public nuisance—and were intended to deter conduct deemed wrongful under California law. While Oakland contends that it suffered damages, we conclude that the purpose of the statute and resulting judgment was not to "afford a private remedy to a person injured by the wrongful act," but its essential character and effect was "to punish an offense against the public justice of the state," as evidenced by Oakland implementing suit. *Huntington*, 146 U.S. at 673-74.[9]

Accordingly, we conclude that this penal judgment cannot be enforced in Nevada pursuant to *Huntington*, and we affirm the judgment of the district court.[10]

SAITTA, GIBBONS, and PARRAGUIRRE, JJ., concur.

PICKERING, J., with whom DOUGLAS, C.J., and HARDESTY, J., agree, dissenting:

A Nevada judgment on a gambling debt is entitled to enforcement in a sister state, even though the sister state has statutes that outlaw gambling and prohibit judicial enforcement of gambling debts. *MGM Desert Inn, Inc. v. Holz*, 411 S.E.2d 399, 401-03 (N.C. Ct. App. 1991) (citing the Full Faith and Credit Clause analysis in *Fauntleroy v. Lum*, 210 U.S. 230, 237 (1902), and the Uniform Enforcement of Foreign Judgments Act). I would extend the same reciprocal courtesy to the California judgment presented here. True, the California judgment, while civil, embodies a fine imposed to coerce compliance with an Oakland outdoor advertising ordinance, after warnings and lesser remedies failed. But the issue is not whether Nevada must allow Oakland to sue on its ordinance originally in a Nevada court. We have here a California judgment, fully enforceable under its laws for enforcing civil judgments, presented to our Nevada courts for enforcement against a Nevada defendant that departed California for Nevada after suffering judgment there. This California judgment is as enforceable under the Full Faith and Credit Clause of the United States Con-

---

[9]Our conclusion that the judgment is unenforceable renders moot the question of whether the doctrine of equitable estoppel bars Desert Outdoor's attempt to set aside the domesticated judgment under NRCP 60(b)(4). Accordingly, we will not discuss this contention further.

[10]We have carefully considered Oakland's contention that the question of whether Nevada will enforce a penal judgment is still permissive in nature and that the judgment here should be enforced based on public policy grounds, and we conclude that this contention is unpersuasive.

stitution[1] and the Uniform Enforcement of Foreign Judgments Act, NRS 17.330-.400, as the gambling debt judgment in *MGM Desert Inn*. For these reasons, and as a matter of comity, I respectfully dissent.

The majority takes *Huntington v. Attrill*, 146 U.S. 657 (1892), as gospel. But *Huntington*'s holding, as distinct from its dictum, is that a Maryland court violated the Full Faith and Credit Clause and erred in not enforcing a New York judgment based on a New York statute that made a corporation's directors who violated the state's corporation laws automatically liable for the entity's debts. In so ruling, the Supreme Court rejected the defendant's argument that the underlying claim was based on "a penal law, in the international sense," *id*. at 673, and thus did not deserve full faith and credit. The "international sense" of the New York judgment and law figured in *Huntington*, at least in part, because the record showed a Canadian tribunal had enforced the same New York judgment that Maryland had declined to enforce. *Id*. at 680-81 (noting that a "Committee of the Privy Council of England, upon an appeal from Canada, in an action brought by the present plaintiff [Huntington] against Attrill in the province of Ontario upon the judgment to enforce which the present suit was brought" had deemed the New York judgment enforceable in Canada). The New York judgment received more full faith and credit in Canada, in other words, than it did in Maryland, an anomaly *Huntington* rectified.

*Huntington* does contain language, cited by the majority, suggesting that the Full Faith and Credit Clause permits a state court to refuse to enforce a sister state penal judgment on the same terms as it might deny effect to a foreign-country penal judgment, and, drawing on international law, *Huntington* deems "penal" a judgment based on a law whose "purpose is to punish an offense against the public justice of the State." *Id*. at 673-74. However, unlike the majority, I view this language as dictum, perhaps necessary to frame the arguments presented but not necessary to the actual holding in *Huntington*. *See* Note, *Enforcement by One State of Penal Statutes of Another*, 26 Harv. L. Rev. 172 n.1 (1912) (the penal exception discussion in *Huntington* is "*dictum*, since the case only decided that a judgment on such a statute must be given full faith and credit under the constitution"); *Kersting v. Hardgrove*, 48 A.2d 309, 310 (N.J. Cir. Ct. 1946) (stating that "courts of one sovereignty will not enforce the penal laws of a foreign sovereignty" is "oft repeated dictum" that goes back to *Huntington* and

---

[1]The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1.

"the maxim of international law that '[t]he courts of no country execute the penal laws of another'" (quoting *The Antelope*, 23 U.S. 66, 123 (1825))). And in a later decision, the Court cited *Huntington* but reserved (or revived) the question whether a sister state judgment for a monetary penalty is entitled to full faith and credit: "We intimate no opinion whether[, in] a suit upon a judgment for an obligation created by a penal law, in the international sense, . . . full faith and credit must be given to such a judgment even though a suit for the penalty before reduced to judgment could not be maintained outside of the state where imposed." *Milwaukee County v. White Co.*, 296 U.S. 268, 279 (1935).

*Milwaukee County* suggests considerable uncertainty as to the scope and/or viability of *Huntington*'s so-called penal exception, as applied to a sister state money judgment, even where, as here, that judgment runs in favor of a local governmental entity. Certainly, *Huntington* does not compel the holding that a state *must*, under the Full Faith and Credit Clause, refuse to enforce a sister state's money judgment because that judgment may be based on a law that is "penal . . . in the international sense." Commentators, too, recognize that *Huntington* is sketchy authority, at best, on this point. As noted in the Restatement (Second) of Conflict of Laws section 120, comment d (1971): "The Supreme Court of the United States has never squarely decided whether a State may look through the valid money judgment of a sister State and refuse to enforce the judgment on the ground that it was based on a penal cause of action." It goes on to say that "[t]he privilege of refusing to enforce the sister State judgment, *if it exists at all*, is a narrow one." *Id.* (emphasis added); *see also* Robert A. Leflar, *Extrastate Enforcement of Penal and Governmental Claims*, 46 Harv. L. Rev. 193, 202 (1932) ("Essentially civil claims should never be denied extrastate enforcement merely because the epithet penal can be attached to them.").

The law distinguishes between suits to enforce claims arising under another state's laws and suits on final judgments rendered by a sister state. States may not be obligated to entertain suits based on sister state tax laws or laws that deeply offend local public policy. *Milwaukee County*, 296 U.S. at 274-75; *Nevada v. Hall*, 440 U.S. 410, 421-22 (1979). Once the claim has been reduced to judgment, however, the Full Faith and Credit Clause makes the judgment portable from state to state and requires interstate enforcement of the civil judgment that results. *Milwaukee County*, 296 U.S. at 275-76; *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 438 (1943) (while "there may be exceptional cases in which the judgment of one state may not override the laws and policy of another, . . . [w]e are aware of no such exception in the case of a money judgment rendered in a civil suit [or] of any considerations of local policy or law which could rightly be deemed to impair the

force and effect which the full faith and credit clause and the Act of Congress require to be given to such a judgment outside the state of its rendition'').

The case law the majority cites to show the vitality of the rule it takes from *Huntington* offers little true support. In one case, *Wellman v. Mead*, 107 A. 396, 398 (Vt. 1919), the Vermont Supreme Court discussed the penal exception only to decide whether Vermont courts would entertain a suit arising under Massachusetts law. The majority's reliance on this case confuses the distinction—drawn in *Milwaukee County* and discussed above—between suits to adjudicate *claims* arising under another state's laws and suits to enforce final *judgments* rendered by a sister state. *Milwaukee County*, 296 U.S. at 275-76. Another case, *Fisher v. Virginia Electric and Power Co.*, 243 F. Supp. 2d 538, 543-44 (E.D. Va. 2003), is dictum about dictum. *Fisher* cites *Huntington* only to inform a discussion on which law—state or federal—determines whether an action is local or transitory in nature (and disparages ''the *Huntington* fallacy'' as ''broad discourse'' involving a ''rather obvious misapprehension'' of law modernly rejected as ''dictum'').

In a third case, *Schaefer v. H. B. Green Transportation Line*, 232 F.2d 415, 418 (7th Cir. 1956), the Seventh Circuit Court of Appeals discussed the penal exception in the context of whether an Illinois law *applied* extraterritorially, not whether an Illinois judgment would be *enforced* extraterritorially. In that case, the plaintiff brought suit in the federal district court of Illinois seeking to enforce an Illinois corporate statute against an Iowa corporation for corporate conduct that occurred in Iowa. *Id.* at 417. The court held that the statute could not be applied. *Id.* at 418. But it is one thing to deny extraterritorial application of a state's statute, and quite another to deny enforcement of a sister state judgment embodying a civil fine imposed for erecting and maintaining billboards in the sister state's airspace and against its zoning laws. Indeed, the majority's fourth case, *Philadelphia v. Austin*, 429 A.2d 568, 572 (N.J. 1981), makes this point—and does so in the context of a local governmental entity's suit on a sister state money judgment for a fine. Thus, in *Austin*, the New Jersey Supreme Court enforced a Pennsylvania judgment in favor of the City of Philadelphia for a penalty incurred for not complying with a Philadelphia wage tax ordinance, doing so both as a matter of full faith and credit under *Milwaukee County*, *id.* at 571, and as a matter of comity. *Id.* at 572-73.[2]

---

[2]*Nelson v. George*, 399 U.S. 224, 229 (1970), and *People v. Laino*, 87 P.3d 27, 33-34 (Cal. 2004), cited by the majority, involve instances where the penal exception actually applies, *i.e.*, in assessing a sister state criminal conviction and its consequences under the host state's criminal laws. *See Nelson*, 399

Differences between the Uniform Enforcement of Foreign Judgments Act and the Uniform Foreign-Country Money Judgments Act, both of which have been adopted in Nevada, provide statutory support for recognizing the California judgment in this case. In *Overmyer v. Eliot Realty*, 371 N.Y.S.2d 246, 256 (Sup. Ct. 1975), a New York court observed that the Uniform Enforcement of Foreign Judgments Act, which governs enforcement of sister state judgments, does not have a penal exception, *id.* at 256, while its Uniform Recognition of Foreign-Country Money Judgments Act, which governs enforcement of international judgments, contains an exception to recognition when the foreign country judgment is for "penalties or taxes." *Id.* From this, the *Overmyer* court concluded that, as a matter of comity, a sister state civil judgment embodying a fine or penalty will be enforced, whereas a comparable foreign country judgment will not.

Our statutes contain the same differences as those in *Overmyer*. Nevada's version of the Uniform Recognition of Foreign-Country Money Judgments Act includes a section on applicability, and provides that a foreign-country judgment for a sum of money need not be enforced if it is for a fine or other penalty. NRS 17.740(2)(b); *see* Unif. Foreign Money-Judgments Recognition Act § 1(2), 13 U.L.A. 44 (2002); Unif. Foreign-Country Money Judgments Recognition Act § 3(b)(2), 13 U.L.A. 12 (Supp. 2010). On the other hand, our Uniform Enforcement of Foreign Judgments Act, which outlines procedures for enforcement of sister state judgments, lacks an applicability provision, much less a penal exception. *See* NRS 17.330-.400. It requires only that the sister state judgment be filed with the clerk of court. NRS 17.350. "A judgment so filed has the same effect . . . as a judgment of a district court of this state and may be enforced or satisfied in a like manner" and is to be treated "in the same manner as a judgment of the district court of this state." NRS 17.350.

For these reasons, I would enforce the City of Oakland's judgment, even though it may embody a fine. Such a judgment might not be internationally enforceable, but it should be enforceable when rendered by a sister state.

---

U.S. at 229 n.6 (discussing the penal exception in connection with a habeas petition challenging a North Carolina criminal conviction/detainer claimed to affect a California parole determination); *Laino*, 87 P.3d at 37-38 (discussing the effect of an Arizona judgment of conviction on California's three-strikes law). Of note, even in this context, Nevada can—though it is not constitutionally required to—recognize and attach consequences to a sister state criminal conviction. *See Donlan v. State*, 127 Nev. 143, 249 P.3d 1231 (2011) (California judgment of conviction required sex offender to register in Nevada, even though the registration requirement had expired in California, where the conviction originated).